IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LAWRENCE WALEWSKI, individually and
on behalf all others similarly situated,

    Plaintiff,

v.     Case No. 6:11-cv-01178-JA-DAB

ZENIMAX MEDIA INC., a Delaware
Corporation, and BETHESDA SOFTWORKS LLC,
a Delaware Limited Liability Company,

    Defendants.

_____/

**DEFENDANTS' MOTION TO DISMISS
AND INCORPORATED MEMORANDUM OF LAW**

Defendants ZeniMax Media Inc. and Bethesda Softworks LLC (collectively, "Defendants"), through their counsel and pursuant to Fed.R.Civ.P. 12(b)(6), 9(b) and M.D. Fla. L.R. 3.01, hereby submit their Motion to Dismiss and Incorporated Memorandum of Law and respectfully request that this Court enter an order dismissing Plaintiff Lawrence Walewski's ("Plaintiff") Class Action Complaint ("Complaint") in its entirety.  In support of their Motion, Defendants state as follows:

**INTRODUCTION**

*The Elder Scrolls IV: Oblivion*® ("*Oblivion*") is a widely known, hugely successful role playing video game, the most highly decorated game within the Defendants' *Elder Scrolls* series. *Oblivion* was first released in 2006 to immediate, worldwide critical acclaim and has won numerous major video game industry awards and honors, including the 2006 Ultimate Game of the Year by the People's Gaming Awards and the PC Game of the Year award from IGN,

GameSpy, GameSpot, and Interactive Achievement Awards. (Compl. ¶ 8.) *Oblivion* remains one of the highest rated video games of all time as measured by MetaCritic.com and GameRankings.com, both of which game rating consensus websites scored *Oblivion* approximately 94 out of a possible 100. Although released more than five years ago, *Oblivion* and its subsequent versions and editions continue to have a large, global fan base. The most recent version of *Oblivion*, the 5th Anniversary Edition, was released on July 12, 2011. (Compl. ¶ 36.) Less than a week later, on July 18, 2011, Plaintiff filed this Complaint alleging a putative class action, seeking to exploit Defendants' years of *Oblivion* product development and significant sales, and demanding "complete disgorgement of all revenue derived from sales of the *Oblivion* video game." (Compl. Prayer for Relief ¶ 4.) The Complaint, without citation, makes only vague allegations that Defendants misrepresented "the scope and longevity of the gameplay." (Compl. ¶ 42.) The Complaint further alleges that *Oblivion* contains an alleged "Animation Defect" – an alleged "glitch" that Plaintiff claims: (i) purportedly occurred after Plaintiff played *Oblivion* with a single character for "450 hours of gameplay" (Compl. ¶¶ 21, 47); and (ii) did not disable the game nor prevent Plaintiff from utilizing other save games, but rather required that Plaintiff "restart the game with an entirely new character." (Compl. ¶ 24.)

    The Complaint fails to state claim upon which relief can be granted and should be dismissed for at least the following three reasons. First, the Complaint seeks to apply the manifestly incorrect state law. Each of the four counts in the Complaint improperly is brought under Maryland state law, but Florida law governs this case under Florida's choice of law rules. Second, the Complaint fails to set forth any specific misrepresentations or omissions with the requisite particularity under Fed.R.Civ.P. 9(b) and as required by well-settled Eleventh Circuit case law and fails to particularly identify any specific misrepresentation or omission that misled

Plaintiff. Third, the only alleged misrepresentations by Defendants vaguely alluded to in the Complaint – (1) an unattributed alleged "online description" in which *Oblivion* is described as "open-ended," and (2) an instruction manual stating *Oblivion's* creators sought "to create a game that offers unlimited possibilities" (Compl. ¶¶ 12-13) – fall far short of actionable misrepresentation and amount to nothing more than non-actionable puffery.[1]

## THE MOTION TO DISMISS STANDARD

To survive a motion to dismiss, "a complaint must now contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In evaluating whether a complaint sets forth sufficient factual allegations, the Supreme Court has clarified "that 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions'" and further "held that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.'" *Id.* (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)) (further internal quotation omitted).

Courts accordingly should consider a two-pronged approach in applying these principles: "(1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.'" *Id.* (quoting *Iqbal* at 1951-52). In

---

[1] The Complaint further refers to the additional terms "free-form" and "sandbox" and claims Defendants promoted "expansive, open-ended, unlimited gameplay." (Compl. ¶¶ 14, 65.) But the Complaint fails to attribute any these statements to Defendants. These unattributed terms are mere attorney argument and are even more violative of Rule 9(b) than the two vague purported misrepresentations actually alleged, as detailed *infra*.

evaluating the sufficiency of a complaint, "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id*. Where the facts alleged in a complaint compel a finding that a lawful alternative explanation is equally plausible, a plaintiff has failed to move its claims from conceivable to plausible, and the complaint must be dismissed. *Id*.

## ARGUMENT

### I. The Complaint Fails To State A Claim And Should Be Dismissed Because Maryland Law Does Not Govern This Case

Each of the four counts set forth in the Complaint – (1) Violation of the Maryland Deceptive Practices Act; Md. Code Ann., Comm. Law § 13-101 *et seq*.; (2) False Advertising in Violation of the Maryland Consumer Protection Act, Md. Code Ann., Comm. Law § 11-701;[2] (3) Breach of Implied Warranty of Merchantability under Md. Code § 2-314; and (4) Restitution/Unjust Enrichment under Maryland common law – should be dismissed under Rule 12(b)(6) for failure to state a claim on which relief can be granted because Maryland law does not govern this case. A district court sitting in diversity[3] "must apply the choice of law rules of the forum state." *Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996) (affirming Southern District of Florida's application of Florida choice of law rules). "Under Florida law, a court makes separate choice of law determinations with respect to each particular issue under consideration" and must apply the appropriate test for

---

[2] Count II of the Complaint is not properly titled. Count II erroneously is titled "False Advertising in Violation of the Maryland Consumer Protection Act, Md. Code Ann., Comm. Law § 11-701" – but the Maryland Consumer Protection Act is codified in Title 13 of the Maryland Code (under which Plaintiff alleged Count I). Title 11 governs trade regulation, not consumer protection, and as set forth *infra*, does not provide for a private cause of action.
[3] The Complaint alleges that this Court has original jurisdiction pursuant to 28 U.S.C. § 1332. Compl. ¶ 4.

each issue. *Id*. (affirming application of Florida tort and contract choice of law tests as appropriate). Florida's tort and contract choice of law rules compel the application of Florida law to this case.

> **A.  The Complaint Improperly Alleges Tort Claims Under Maryland Statutory Law.**

Florida courts apply the "most significant relationship" test under the Restatement to determine the proper law to apply to a tort claim. *Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361, 1365 (S.D. Fla. 2007). The Court should "take into account the following contacts: '(a) the place the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.'" *Id*. (quoting Restatement (Second) of Conflict of Laws § 145 (1971)). The following "specific choice of law principles for fraud and misrepresentation claims" also should be considered:

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
>
> (b) the place where the plaintiff received the representations,
>
> (c) the place where the defendant made the representations,
>
> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
>
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

5

> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Id.* (citing *Trumpet Vine*, 92 F.3d at 1118) (quoting <u>Restatement (Second) of Conflict of Laws § 148 (1971)</u>). Under these factors, Florida law applies to Count I and Count II of the Complaint.

The Southern District of Florida's opinion in *Berry v. Budget Rent A Car Systems, Inc.* is directly applicable to this case. 497 F Supp. 2d 1361 (S.D. Fla. 2007). In *Berry*, plaintiffs filed a purported class action complaint alleging that undisclosed fees in rental car agreements violated the New Jersey Consumer Fraud Act, among other state law claims. *Id.* at 1363. The court rejected Plaintiff's argument that New Jersey law governed simply because the defendant was incorporated in New Jersey, holding:

> A consideration of the [Restatement] Sections 145 and 148 contacts persuades this Court that it should apply the law of the state in which each Plaintiff rented a vehicle, rather than the law of New Jersey, the state in which Budget is headquartered. The Defendant made, and Plaintiffs received, the alleged misrepresentations at each individual Budget rental center when Plaintiffs rented the vehicles. Plaintiffs acted in reliance upon the alleged misrepresentations in those states, and Plaintiffs are domiciled in those states. The place where the tangible thing which is the subject of the transaction – the rental vehicle – is located, for each rental, is the state in which it was rented. Finally, Plaintiffs were each to render performance under the rental contract in the states in which they rented the vehicles. Although Defendant Budget is headquartered in New Jersey, this one factor alone cannot overcome the weight of the other factors.

*Id*. The *Berry* court accordingly dismissed Plaintiff's claim under New Jersey law for failure to state a claim under Rule 12(b)(b). *Id.* at 1366.

These factors compel the application of Florida law to this case. Plaintiff is a citizen of Florida. (Compl. ¶ 1.) Presumably Plaintiff purchased *Oblivion* in Florida.[4] To the extent

---

[4] The Complaint fails to properly allege where Plaintiff actually purchased *Oblivion* – but this failure only further warrants the proper application of Florida law. *Brisson v. Ford Motor Co.*, 602 F. Supp. 2d 1227, 1231 (M.D. Fla. 2009) (Applying Florida law despite plaintiffs' failure to allege where purchases of goods under warranty occurred because "[i]n a situation in which the

6

Plaintiff actually received and relied upon the alleged misrepresentations,[5] his receipt and reliance occurred in Florida.  The tangible thing which is the subject of the transaction – Plaintiff's copy of *Oblivion* – is located in Florida.  And Plaintiff admits for venue purposes that "a substantial part of the events giving rise to the claims asserted herein occurred in this district." (Compl. ¶ 5.)  The sole connection between the Complaint and the State of Maryland is the allegation that Defendants' principal place of business is in Maryland.  (Compl. ¶¶ 2, 3.)  This factor "alone cannot overcome the weight of the other factors" – and this Court should apply Florida law to Plaintiff's tort claims.  *Berry* at 1366.  Count I and Count II accordingly should be dismissed.  *Id.*; *Pastor v. Union Central Life Ins. Co.*, 184 F. Supp. 2d 1301, 1308 (S.D. Fla. 2002) (dismissing claim filed under Florida statute where New Jersey law governed under Florida's choice of law rules because the contract at issue was entered into in New Jersey).[6]

> B. **The Breach of Warranty and Unjust Enrichment Claims are Governed by Florida Law.**

Count III (breach of the implied warranty of merchantability under Md. Code § 2-314) Count IV (restitution/unjust enrichment) are contract and quasi-contract claims, to which "Florida's choice-of-law rule applies the doctrine of *lex loci contractus* … and considers where the contract was executed."  *David v. American Suzuki Motor Corporation*, 629 F. Supp. 2d 1309, 1315-17 (S.D. Fla. 2009) (holding that Florida law governed putative class action plaintiff's claims for breach of the implied warranty of merchantability and unjust enrichment

---

facts alleged do not substantiate application of any particular foreign law, the forum generally applies the law of the state in which it sits.")
[5] These allegations are not adequately alleged under Rule 9(b), as discussed *infra*.
[6] Count II of Plaintiff's Complaint further should be dismissed because the Maryland False Advertising Statute ("MFAS"), Md. Code Ann., Comm. Law § 11-701, does not create a private right of action and disclaims any impact on private litigation.  MFAS § 11-705(a) ("[a]ny person who violates any provision of this subtitle is subject to a penalty … which penalty ***the Attorney General*** may recover for the State in a civil action") (emphasis added); MFAS § 11-707 (the statute "does not modify any right of a person in private litigation").  No court has recognized a private cause of action under the MFAS – and this Court should not be the first.

7

"[b]ecause Plaintiff purchased his motorcycle in Florida") (citing *Brisson*, 602 F. Supp. 2d at 1231 (applying Florida law to putative class action plaintiffs' breach of express and implied warranty claims where the complaint failed to allege where plaintiffs purchased their trucks despite defendant's incorporation in Delaware and one class member residing in Delaware)); *In re NationsRent Rental Fee Litigation*, Case No. 06 Civ. 60924, 2009 WL 636188, at *10 (S.D. Fla. Feb. 24, 2009) ("An unjust enrichment claim is one in the nature of quasi-contract. Florida's choice of law as to contracts is that of *lex loci contractus*, which looks to the place the contract was executed. Accordingly, the law on unjust enrichment of each renter's particular state will be applied in resolving those claims.").) Plaintiff's point of purchase – the location where the quasi-contract between the parties was entered – although not pled presumably is in the State of Florida. Under this well-established case law, the implied warranty and unjust enrichment counts are governed by Florida law – and Counts III and IV of the Complaint are improperly alleged under Maryland law and should be dismissed for failure to state a cause of action. *Berry* at 1366; *Pastor* at 1308.

**II.     The Complaint Does Not Meet The Heightened Particularity Requirement of Rule 9(b)**

The Complaint is grounded entirely in the vague and improper allegations of unidentified misrepresentations and omissions by Defendants and should be dismissed because it fails to allege the claimed misrepresentations and omissions with the requisite particularity under Fed.R.Civ.P. 9(b). *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (stating that "[m]ost courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b)" and granting motion to dismiss because plaintiff's "FDUTPA claim

should be plead with particularity, and as plead, is insufficient").[7]  Courts in the Middle District of Florida routinely dismiss claims under the Florida Deceptive and Unfair Trade Practices Act, § 501.204(1), Fla. Stat. (2007) ("FDUTPA"), that fail to satisfy the heightened particularity standard of Rule 9(b).  *Florida Digital Network, Inc. v. Northern Telecom, Inc.*, Case No. 06 Civ. 889, 2006 WL 2523163, at *5 (M.D. Fla. Aug. 30, 2006) (dismissing FDUTPA claim under Rule 9(b) where plaintiff's "vague and conclusory allegations [were] insufficient to support a claim for violation of the FDUPTA"); *Wrestlerunion, LLC v. Live Nation Television Holdings, Inc.*, Case No. 07 Civ. 2093, 2008 WL 3048859, at *3 (M.D. Fla. Aug. 4, 2008) (holding that "Plaintiff's contention, without citation to authority, that its FDUTPA claim is not required to be pled with particularity is rejected" and dismissing FDUTPA claim under Rule 12(b)(6) and Rule 9(b)).

The Eleventh Circuit recently held "that pursuant to Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *American Dental Ass'n*, 605 F.3d at 1291-92 (affirming dismissal under Rule 9(b) where the complaint failed to set forth any "specific misrepresentations in any of the communications Plaintiffs referenced" and any "connection between the alleged misrepresentations and any particular acts" by Defendants). Plaintiff further must specifically "allege facts with respect to each defendant's participation in the fraud." *Id.* at 1291.

---

[7] Claims brought under the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Comm. Law § 13-101 *et seq*., also must satisfy the heightened pleading requirements of Rule 9(b) – and Plaintiff's statutory tort claims should be dismissed regardless of this Court's determination of the choice of law issue, *supra*. *McKinney v. Fulton Bank*, 776 F. Supp. 2d 97, 104 (D. Md. 2010) (dismissing MCPA claim under Rule 9(b) where plaintiff "failed to state her MCPA claim with sufficient particularity").

In *American Dental Association*, the Eleventh Circuit reviewed the Southern District of Florida's dismissal of a purported class action complaint in which the plaintiffs alleged "that defendants represented in their on-line advertising, in their provider agreements and in their fee schedules that their in-network providers would be compensated for covered procedures based on commonly accepted dental practice[.]" *Id*. at 1291. The Court determined that "Plaintiffs do not point to a single specific misrepresentation by Defendants regarding how Plaintiffs would be compensated … nor do they allege the manner in which they were misled by the documents, as they are required to do under Rule 9(b)." *Id*. at 1291-92. The *American Dental Association* plaintiffs' complaint further set forth "no allegations as to who, if anyone, read the advertisements and was misled by them" and failed to connect the alleged misrepresentations "to any particular acts of bundling or downcoding that Plaintiffs find unacceptable." *Id.* at 1292. The Eleventh Circuit found it "telling" that none of the named plaintiffs could offer any specific examples of how they were misled, and accordingly affirmed the district court's dismissal under Rule 9(b). *Id*.

The Complaint's vague allegations of purported misrepresentations and omissions by Defendants wholly fail to identify the time, place and person responsible for the statement(s), the manner in which Plaintiff was misled, and the precise misrepresentation or omission that purportedly misled Plaintiff and fall well short of the heightened standard under Rule 9(b). The Complaint vaguely alludes to only two alleged misrepresentations that fail the heightened pleading standard of Rule 9(b): (1) "Defendants claimed" "in an online description" that *Oblivion* offered "open-ended game play" (Compl. ¶ 12); and (2) "the instruction manual for the *Oblivion Game of the Year Edition*" allegedly states: "With Elder Scrolls, our goal has always

10

been to create a game that offers unlimited possibilities."[8] (Compl. ¶ 13.) But nowhere in the Complaint does Plaintiff allege when these statements were made, or by whom. (Compl. ¶¶ 12-13.) The Complaint fails to identify which Defendant made the alleged misrepresentations. (*See, e.g.*, Compl. ¶ 12 ("in an online description of the features of the game, Defendants claimed…").) The Complaint further does not identify even a single specific misrepresentation or omission made by Defendants that misled him prior to his purchase of *Oblivion*, and only vaguely alleges that before purchasing *Oblivion*, "Plaintiff viewed Defendants' advertisements and representations." (Compl. ¶ 42.) These conclusory allegations are insufficient under Rule 9(b). *American Dental Association* at 1292; *D.H.G. Properties, LLC v. Ginn Companies, LLC*, Case No. 09 Civ. 735, 2010 WL 5584464, at *6 (M.D. Fla. Sept. 28, 2010) (dismissing fraud claims under Rule 9(b) where although the complaint "discloses many generalized allegations regarding the overall fraudulent scheme … very few allegations actually purport to describe facts or events relating to Plaintiff or Plaintiff's purchase of the property at issue"); *Feingold v. Budner*, Case No. 08 Civ. 80539, 2008 WL 4610031, at *2 (S.D. Fla. Oct. 10, 2008) (dismissing fraud claim under Rule 9(b) where plaintiff failed to allege specific facts concerning "the time, place, content or manner of the misleading statements" or that "the allegedly fraudulent statements in some [] way 'led directly' to his injury").

### III. The Alleged Misrepresentations Are Non-Actionable Puffery.

The crux of the Complaint is the allegation that Defendants' two vaguely alleged misrepresentations – (1) that *Oblivion* offered "open-ended game play" (Compl. ¶ 12); and (2) the instruction manual states that the goal of *Oblivion's* creators was "to create a game that offers unlimited possibilities" (Compl. ¶ 13) – misled Plaintiff regarding the scope and content of the

---

[8] Plaintiff's Complaint offers no explanation for the incongruous claim that a statement contained in the instruction manual of the game – which is read after the game is purchased and the software box is opened – somehow misled Plaintiff prior to his purchase of *Oblivion*.

game. (Compl. ¶ 14.) These alleged misrepresentations are nothing more than puffery under well-established Eleventh Circuit case law.

Statements that set forth "mere opinions or exaggerations concerning the qualities of an offering by a seller constitute non-actionable puffery." *Gentry v. Harborage Cottages-Stuart, LLLP*, 602 F. Supp. 2d 1239, 1252 (S.D. Fla. 2009); *overruled in part on other grounds by Gentry v. Harborage Cottages-Stuart, LLLP*, --- F.3d ----, 2011 WL 3904087 (11th Cir. 2011); *Mount Sinai Medical Center v. Heidrick & Struggles, Inc.*, 188 Fed. Appx. 966, 968-69 (11th Cir. 2006) (affirming district court's ruling that defendants' representation that it was "the world's premier provider of executive level search and leadership" was "mere puffing" that could not be considered "a misrepresentation of fact" and affirming dismissal of fraudulent inducement claim). In *Gentry*, the Court held that the defendants' statements that:

> [T]he Harborage Condominiums (1) are a luxury development; (2) are extraordinary; (3) blend tropical charm with contemporary elegance; (4) combine materials and finishes of exceptional quality with timeless craftsmanship; (5) provide spacious patios from which to enjoy glorious sunrises over the water; and (6) that Altman Development Corporation consistently delivers products and service of the highest caliber to clients and residents[.]

… "[F]all squarely within the scope of opinions, exaggerations and general characterizations that constitute puffery. **None of these statements attribute a sufficiently specific quality** to the Harborage Condominiums to constitute an untrue statement of material fact or an omission to state a material fact." *Id.* at 1252-53 (emphasis added).

The terms 'open-ended' and "unlimited possibilities" similarly do not attribute a specific quality to *Oblivion*. (Compl. ¶¶ 12-13.) These terms merely are the opinions of the sellers of *Oblivion* regarding the player choice involved and non-linear nature of the gameplay, not

misrepresentations of fact on which a proper cause of action may be based.[9] These statements amount to nothing more than non-actionable puffery.

## CONCLUSION

For at least the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Class Action Complaint in its entirety.

Dated: September 26, 2011   Respectfully submitted,

s/ John T. Williams
HINKHOUSE WILLIAMS WALSH LLP
John T. Williams (admitted *pro hac vice*)
Jason H. Nash (admitted *pro hac vice*)
180 N. Stetson Avenue, Suite 3400
Chicago, Illinois  60601
Telephone: (312) 784-5400
Facsimile: (312) 784-5499
jwilliams@hww-law.com
jnash@hww-law.com

William F. Jung
FBN: 380040
JUNG & SISCO, P.A.
101 E. Kennedy Blvd., Ste. 3920
Tampa, FL 33602
Telephone: (813) 225-1988
Facsimile: (813) 225-1392
wjung@jungandsisco.com

***Attorneys For Defendants ZeniMax Media Inc. and Bethesda Softworks LLC***

---

[9] These statements also are not misleading.  The terms "open-ended" and "open-world" mean that a player is not required to experience the game linearly through a single character or quest line that terminates at the conclusion of that quest line.  Because the game does not require a linear progression, players are free "to play creatively, free of artificial structural constraints." (Compl. ¶ 14.)

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Motion to Dismiss and Incorporated Memorandum of Law was served upon the following counsel of record by electronic mail through the ECF System on September 26, 2011.

        s/ John T. Williams
        HINKHOUSE WILLIAMS WALSH LLP
        John T. Williams (admitted *pro hac vice*)
        Jason H. Nash (admitted *pro hac vice*)
        180 N. Stetson Avenue, Suite 3400
        Chicago, Illinois  60601
        Telephone: (312) 784-5400
        Facsimile: (312) 784-5499
        jwilliams@hww-law.com
        jnash@hww-law.com

        William F. Jung
        FBN: 380040
        JUNG & SISCO, P.A.
        101 E. Kennedy Blvd., Ste. 3920
        Tampa, FL 33602
        Telephone: (813) 225-1988
        Facsimile: (813) 225-1392
        wjung@jungandsisco.com

        ***Attorneys For Defendants ZeniMax Media Inc. and Bethesda Softworks LLC***

ND: 4852-3777-0250, v.  2