## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

LAWRENCE WALEWSKI, individually and on behalf
of all others similarly situated,

        *Plaintiff*,                            Case No. 6:11-cv-01178-JA-DAB

v.

ZENIMAX MEDIA, INC., a Delaware Corporation,
and BETHESDA SOFTWORKS, LLC, a Delaware
Limited Liability Company,

        *Defendants*,

_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW

## TABLE OF CONTENTS

INTRODUCTION ......................................................................................... 1

FACTUAL BACKGROUND ........................................................................ 2

LEGAL STANDARD ................................................................................. 3

ARGUMENT .......................................................................................... 4

   I.   **Plaintiff Properly Asserts Claims Under Maryland Law**.......................... 4

      A.  **Maryland Law has the Most Significant Relationship to the Claims Asserted by Plaintiff**.......................................................................... 5

      B.  **The Court Should Refrain from Conducting a Comprehensive Choice of Law Analysis Until the Close of Discovery**.......................................... 8

      C.  **Plaintiff Properly Alleges Claims Under Both Maryland and Florida Law**.............. 10

         1)  *Unjust Enrichment under Florida Law*.......................................... 10

         2)  *Breach of Implied Warranty of Merchantability Under Florida Law* ............... 11

         3)  *Violation of Florida's Deceptive and Unfair Trade Practices Act*.................... 12

   II.   **The Complaint Amply Meets the Pleading Requirements of Rule 9(b)**........................ 14

      A.  **As a Threshold Matter, Plaintiff's Complaint Only Partially Sounds in Fraud**.......... 14

      B.  **The Allegations that Sound in Fraud Satisfy Rule 9(b)**.................................... 14

   III.   **Defendants' Misrepresentations Simply do not Constitute Non-Actionable Puffery**......... 18

      **CONCLUSION** ......................................................................... 20

# TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)……………………………………………………………... 3

**United States Circuit Court of Appeals Cases:**

*Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364 (11th Cir. 1997)…………………. 15

*Friedlander v. Nims*, 755 F.2d 810 (11th Cir. 1985)……………………………………………………… 15

*Grupo Televisa v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007)……… 5

*Hill. v. Morehouse Med. Assoc. Inc.*, 2003 WL 22019936 (11th Cir. 2003)…………………………….. 17

*Judge v. American Motors Corp.*, 908 F.2d 1565, 1568 (11th Cir. 1990)……………………………………… 6

*Lustig v. Bear Stearns Residential Mortg. Corp.*, 411 Fed. Appx. 224 (11th Cir. 2011)……………… 12-13

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230 (11th Cir. 2008)……………………………………………… 15

*Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003)………………………………………… 3

*United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304 (5th Cir. 1999)…………… 17

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194 (11th Cir. 2001)………………………………………………… 15

**United States District Court Cases:**

*Adams v. NVR Homes, Inc.*, 193 F.R.D. 243 (D. Md. 2000)………………………………………………… 14

*Arroyo v. Milton Acad.*, 2011 WL 65938 (D. Vt. Jan 10, 2011)…………………………………………….. 9

*Belloco v. Curd*, 2005 WL 2675022 (M.D. Fla. Oct. 20, 2005)…………………………………………… 20

*Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361 (S.D. Fla. 2007)………………………... 7

*Calixto v. Bowman Acme Corp.*, 637 F. Supp. 2d 1064, 1067 (S.D. Fla. 2007)………………………….....5

*Court-Appointed Receiver of Lancer Mgmt. Group LLC v. Lauer*, 2010 WL 1372442
(S.D. Fla. Mar. 31, 2010)……………………………………………………………………………….. 9

*Cunningham v. PFL Life Ins. Co.*, 42 F. Supp. 2d 872, 883 (N.D. Iowa 1999)…………………………… 8

*Elkins v. Equitable Life Ins. Co.*, 1998 WL 133741 (M.D. Fla. Jan. 27 1998)…………………………… 8

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007)………………………………… 16

*Gentry v. Harborage Cottages-Stuart, LLP*, 602 F. Supp. 2d 1239 (S.D. Fla. 2009)…………………….. 19

*Graboff v. The Collern Firm*, 2010 WL 4456923 (E.D. Pa. Nov. 8, 2010)……………………………….. 9

*Grove v. Principal Mut. Life Ins. Co.*, 14 F. Supp. 2d 1101, 1106-07 (S.D. Iowa 1998)……………….... 7-8

*Haley v. Corcoran*, 659 F. Supp. 2d 714 (D. Md. 2009)……………………………………………....... 15

*In re ConAgra Peanut Butter Prod. Liab. Litig.*, 2008 WL 2132233 (N.D. Ga. May 21, 2008)………….…9

*In re Eagle Building Technologies, Inc. Sec. Litig.*, 319 F. Supp. 2d 1318 (S.D. Fla. 2004)……………..... 15

*In re Kirschner Med.Corp. Sec. Litig.*, 139 F.R.D. 74 (D. Md. 1991)…………………………………….. 8

*In re Winn-Dixie Stores, Inc. Sec. Litig.*, 531 F. Supp. 2d 1334 (M.D. Fla. 2007)………………………... 18

*Johnson v. Wheeler*, 492 F. Supp. 2d 492 (D. Md. 2007)………………………………………………… 15

*Miera v. National City Mortg.* 2009 WL 2495757 (M.D. Fla. Aug. 13, 2009)…………………………...16

*Pinellas Suncoast Transit Authority v. Mincom, Inc.*, 2007 WL 2225812 (M.D. Fla. Jul. 31, 2007)….. 19-20

*Silver v. Digges*, 2006 WL 2024935 (M.D. Fla. Jul. 17, 2006)…………………………………………… 14

*Smart v. Decision One Mortg. Co., LLC*, 2011 WL 829212 (D. Md. Mar. 7, 2011)………………………. 13

*Smith v. Capital One Auto Fin., Inc.*, 2011 WL 3328565 (D. Md. Aug. 2, 2011)………………………... 16

*Snyder v. Farnam Companies, Inc.*, 2011 WL 2112500 (D.N.J. May 26, 2011)…………………………9

*Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439 (S.D.N.Y. 2011)………………………………….. 9

*Terrill v. Electrolux Home Products, Inc.*, 753 F. Supp. 2d 1272, 1281 (S.D. Ga. 2010)………………….. 7

**State Court Cases:**

*Amoroso v. Samuel Friedland Family Enterprises*, 604 So. 2d 827 (Fla. Ct. App. 1992)…………….. 11-12

*Bennett Heating & Air Conditioning, Inc. v. NationsBank of Maryland*, 654 A.2d 949
(Md. App. 1995)…………………………………………………………………………………… 11

iii

*Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)…………………………………… 5

*City First Mortg. Corp. v. Barton*, 988 So. 2d 82 (Fla. Ct. App. 2008)…………………………………….. 13

*Hillman Const. Corp. v. Walner*, 636 So. 2d 576 (Fla. Ct. App. 1994)…………………………………….. 11

*Lloyd v. Gen. Motors Corp.*, 397 Md. 108 (2007)……………………………………………………... 12-13

## <u>Other Authorities:</u>

Black's Law Dictionary (9th ed. 2009)…………………………………………………………….... 18

Md. Code Ann., Comm. Law §§ 13-101, *et seq*…………………………………………………….... 13

Md. Code Ann., Comm. Law § 2-314………………………………………………………………… 12

Restatement (Second) Conflict of Laws § 145……………………………………………………….... 5-7

## <u>INTRODUCTION</u>

In their motion to dismiss, Defendants attempt to deflect attention from their unlawful conduct by touting the success of *The Elder Scrolls IV: Oblivion* video game as a product that has resulted in "significant sales"—as if that has any bearing on whether Plaintiff's complaint is properly pleaded under federal law. Of course, it does not and the motion to dismiss should be denied for the following reasons.

First, Walewski properly brought his claims under Maryland law because the facts currently available to the parties—as alleged in the complaint—demonstrate that the defective product was designed, and the corporate decisions and policies giving rise the instant claims were made, exclusively in Maryland. Dismissal on choice of law grounds is also inappropriate because Defendants base their argument on contested and unknown facts, which only highlights why the choice of law determination is better left for a later time when the parties and the Court have had the benefit of discovery. And, even if the Court were to find that Florida law governs this dispute, it would change nothing as the challenged conduct gives rise to substantially the same claims under Florida law. Ultimately, Plaintiff's claims are also properly pleaded under Florida law, and Defendants do not contend otherwise.

Second, Plaintiff's allegations satisfy the specificity requirements of Rule 9(b), as they set forth (in detail) the time, place and nature of Defendants' misrepresentations *and* the critical omissions at the heart of this case—that Defendants were aware of, but failed to disclose or address, the existence of the Animation Defect. Plaintiff's particularized allegations relating to the Animation Defect, coupled with Plaintiff's identification of affirmative misstatements, readily meet Rule 9(b)'s pleading standards. By arguing otherwise, Defendants simply ignore the specific facts alleged in the complaint and demand a level of detail beyond what even Rule 9(b) requires.

Finally, Defendants' misrepresentations go well beyond non-actionable "puffery." Plaintiff's allegations demonstrate that Defendants made factual misstatements that attributed specific qualities to the

1

*Oblivion* video game and had distinct and tangible meanings to consumers, which made them rely on the misstatements to their detriment. These misrepresentations are simply not the type of "exaggerated opinions" or "forward looking statements" that courts have identified as amounting to puffery.

## **FACTUAL BACKGROUND**

Bethesda is the developer and publisher of the *Elder Scrolls*, a series of single-player, role-playing video games. (Compl. ¶ 6.) *The Elder Scrolls IV: Oblivion* is the fourth and most recent installment of the series. (*Id.* ¶ 8.) Originally released on March 20, 2006, *Oblivion* is available on Windows-based personal computers as well as the Xbox 360 and PlayStation 3 gaming consoles. (*Id.*)

The *Oblivion* video game purports to offer open-ended or "sandbox" gameplay, allowing players to freely roam the gaming world and perform various tasks, develop individual characters, or simply explore. (*Id.* ¶ 10.) While the game features a main quest and storyline, players are encouraged to postpone the main quest to explore the gaming world at length and perform "side quests" outside of the primary storyline. (*Id.*) The open-world nature of *Oblivion*, the size of the virtual gaming world, and the longevity of the game were primary features emphasized by Defendants in their online and print advertising. (*Id.* ¶¶ 11-13.) In particular, Defendants represented that *Oblivion* offered "open-ended game play" in an "enormous world" with "unlimited possibilities" that players can "explore at their own pace." (*Id.* ¶¶ 12-13.) Defendants encouraged consumers to spend substantial amounts of time playing *Oblivion* and developing individual characters, and even sponsored an "*Oblivion* Iron Man" contest challenging players to spend in excess of 1000 hours playing with a single character and save file. (*Id.* ¶ 18.)

Unbeknownst to consumers, each copy of the *Oblivion* video game is hampered by a severe design defect that suddenly and unexpectedly occurs during gameplay (the "Animation Defect"). (*Id.* ¶ 20.) Once manifested, the Animation Defect causes all "secondary" animations to freeze, prohibiting players from advancing into new areas of the gaming world and preventing numerous basic character animations that are

essential to progressing in the game. (*Id.* ¶¶ 23-24.) The result of the Animation Defect is crippling to general gameplay and the player's use of the game, and players are unable to fix the technical issues following the onset of the defect. (*Id.*) Accordingly, the player's only option in response to the Animation Defect is to abandon and erase the existing game and restart from the beginning of the game, though many players simply quit playing because the defect will inevitably reoccur during subsequent games. (*Id.* ¶ 30.)

Defendants have long been aware of the Animation Defect and its impact on *Oblivion*. (*Id.* ¶¶ 31-34.) Despite their knowledge of the defect, however, Defendants have refused to provide a patch, replacement product, or any other remedy to consumers who experience the Animation Defect. (*Id.* ¶¶ 33, 35.) Nor have Defendants taken any action to notify past or future purchasers of the inherent defects in the game. (*Id.* ¶ 35.) Instead, Defendants continue to advertise and sell *Oblivion* to consumers, all of whom are led to believe that they will experience open-ended, expansive, and unlimited gameplay. (*Id.* ¶ 37.)

## **LEGAL STANDARD**

In reviewing a motion to dismiss, the court "must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003). Rule 8(a)(2) requires only that a pleading contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)). Detailed factual allegations are not required. *Ashcroft*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 555). Rather, a motion to dismiss must be denied if the complaint contains a claim that is "plausible on its face," which occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

3

## ARGUMENT

Maryland law applies to this dispute because the Defendants, as citizens of Maryland, designed the defective product in Maryland, made the decision not to disclose the defect in Maryland, and made the misrepresentations of which Plaintiff complains from Maryland. And, while the choice of law decision is better left for another day, even if Florida law applied, Plaintiff's complaint would still survive Defendants' motion as the challenged conduct gives rise to substantially the same claims under Florida law. In the end, Plaintiff provides detailed factual allegations that identify the "who," "what," "when," "where," and "how" of Defendants' fraudulent misrepresentations and omissions—allegations that amply satisfy Rule 9(b)'s heightened pleading standard and, when taken as true, amount to far more than non-actionable puffery. Accordingly, the motion to dismiss should be denied in its entirety.

## I.      Plaintiff Properly Asserts Claims Under Maryland Law.

Each of Plaintiff's claims against Defendants (who are both headquartered in Maryland) arise from Defendants' design of a defective product (which occurred in Maryland), failure to disclose the existence of the Animation Defect (a decision made in Maryland), and misrepresentations and omissions regarding the attributes of *Oblivion* (which emanated from Maryland).[1] Despite these salient facts that support application of Maryland law, Defendants argue that Plaintiff should have asserted his claims under Florida law.[2] Not only is Defendants' resistance to Maryland law puzzling, it is also improper under applicable choice of law standards and controlling case law. Defendants' arguments should be rejected because they are premature,

---

[1]      Although Plaintiff does not contend that Defendants' terms of use governs this dispute—it does not—it is nonetheless notable that Defendants' terms of use which purport to govern their websites, as well as End User Licensing Agreements which purport to govern numerous Bethesda video games (though not *Oblivion*), mandate application of Maryland law for any and all disputes. Thus, when Defendants' own terms of use contain a Maryland choice of law provision, Defendants' insistence that Florida law governs this dispute is quite bizarre.

[2]      At the outset, Defendants are mistaken that their choice of law arguments—even if accepted—support dismissal of Plaintiff's complaint. In arguing that Florida law applies to Plaintiff's claims, Defendants do not challenge the substance of Plaintiff's allegations or suggest that they fail to state a claim for relief under Florida law. As demonstrated throughout this opposition, Plaintiff's allegations are sufficient to state causes of action under both Maryland and Florida law, and Plaintiff can recast his allegations under Florida common and statutory law, if necessary.

and the available facts alleged in the complaint favor application of Maryland law.

**A.     Maryland Law has the Most Significant Relationship to the Claims Asserted by Plaintiff.**

As discussed more fully below, the Court would be best suited to engage in a detailed choice of law analysis after the close of discovery and submission of relevant evidence by the Parties. However, should the Court choose to consider Defendants' choice of law arguments at this juncture, the "significant relationship test" applied by Florida courts mandates the application of Maryland law to Plaintiff's claims.

In a case arising under diversity jurisdiction, a federal court sitting in Florida must apply Florida choice of law principles. *Grupo Televisa v. Telemundo Communications Group, Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007). For tort actions, the Supreme Court of Florida has adopted the flexible "significant relationship test" set out in Restatement (Second) of Conflict of Laws § 145, wherein the "rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to the issue, has the most significant relationship to the occurrence and the parties." *Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980).

In determining which state has the most significant relationship to the dispute, courts consider the following factors: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship, if any, between the parties is centered. *Grupo Televisa*, 485 F.3d at 1240. No single factor is controlling, and the weight that courts attribute to each factor varies depending on the type of misconduct alleged and the injury suffered by the plaintiff. *Calixto v. Bowman Acme Corp.*, 637 F. Supp. 2d 1064, 1067 (S.D. Fla. 2007); *see also* Restatement (Second) Conflict of Laws § 145(2) (the Restatement contacts "are to be evaluated according to their relative importance with respect to the particular issue"). In cases involving "fraudulent misrepresentations . . . the principal location of the defendant's conduct is the contact that will usually be given the greatest weight in determining the state

whose local law" applies. Restatement (Second) of Conflict of Laws § 145 cmt. f (1971).

Because this case involves Defendants' intentional misrepresentations and omissions of material facts, as well as an allegedly defective product design and decisions that led thereto, the "location of Defendants' conduct" is given the "greatest weight" of the relevant Restatement factors. Here, the conduct that gives rise to all of Plaintiff's claims occurred in or emanated exclusively from Maryland. In particular, Plaintiff's claims are based upon the alleged design and/or developmental defect in the *Oblivion* video game (Compl. ¶ 20-25, 64-65, 71), Defendants' intentional failure to disclose the Animation Defect to consumers or address the issue for prior purchasers (Compl. ¶ 31-35, 64), and Defendants' misrepresentations regarding the scope and gameplay of the *Oblivion* video game. (Compl. ¶ 10-19, 64, 70.) Thus, the factor entitled to the "greatest weight" in the Court's analysis weighs heavily in favor of applying Maryland law.

Nor do the remaining Restatement factors support the application of Florida law. The place where the injury occurred, which Defendants assume (without support) to be Florida, is of "little actual significance" because this case involves Defendants' misrepresentations and omissions of material fact and an alleged product design defect. *See Judge v. American Motors Corp.*, 908 F.2d 1565, 1568 (11th Cir. 1990 (in many cases, "the state where the injury occurred may have little actual significance for the cause of action" and is thus not determinative of the applicable law). While Plaintiff is a Florida resident, both Defendants are incorporated and maintain their principal places of business in Maryland, where the majority of discoverable evidence is likely to be located. Finally, the "relationship, if any" between Plaintiff and Defendants is centered in Maryland, where Defendants designed the defective game that was purchased by Plaintiff, created the advertisements that were viewed by Plaintiff, made the decision not to disclose the Animation Defect, and failed to remedy the Animation Defect after Plaintiff purchased the *Oblivion* video game and other consumers planned to purchase it.

In arguing that Florida law applies to Plaintiff's claims, Defendants blindly recite and purport to

analyze the Restatement factors without regard to the subject matter of the complaint or the nature of Plaintiff's claims and allegations. Defendants give no consideration to the location of the conduct causing Plaintiff's injury (the most important contact in a case of this nature), and give undue weight to its own characterization of the place where the injury occurred (a factor that is given little weight in this case). In other words, Defendants' analysis is flawed.

Citing *Berry v. Budget Rent A Car Systems, Inc.*, Defendants argue that the "sole connection between the complaint and the State of Maryland" is the location of Defendants' offices in Maryland, which "alone cannot overcome the weight of the other [Restatement] factors." (MTD at 7, citing *Berry*, 497 F. Supp. 2d 1361 (S.D. Fla. 2007).) But as demonstrated above, Defendants' reliance on *Berry* rests on the demonstrably false premise that Plaintiff seeks to apply Maryland law solely based on the location of Defendants' offices. Unlike *Berry*, where the only factor favoring application of foreign law was the location of the defendant's headquarters, this case indisputably arises from *conduct* that occurred in Maryland. Accordingly, *Berry* is inapposite.[3]

In contrast to Defendants' rigid analysis, the majority of courts who have addressed choice of law disputes in the context of defective products or fraudulent misrepresentations have applied the law of the state in which the injury-causing conduct occurred. *See Terrill v. Electrolux Home Products, Inc.*, 753 F. Supp. 2d 1272, 1281 (S.D. Ga. 2010) (Georgia law applied to all claims because the defendant's headquarters were located in Georgia and "the corporate decisions surrounding [defendant's] response to the alleged defects were made in [Georgia]"); *Grove v. Principal Mut. Life. Ins. Co.*, 14 F. Supp. 2d 1101, 1106-07 (S.D. Iowa 1998) (though plaintiffs were Florida residents when they negotiated and purchased insurance policies, Iowa law applied because the defendant was incorporated in Iowa, the "sales

---

[3]     *Berry* is further distinguishable because the plaintiff therein based his claims solely on affirmative misrepresentations that were disseminated and viewed at individual car rental locations owned by the defendant. In contrast, Plaintiff here bases his claims on both affirmative misrepresentations and omissions of material fact that were disseminated on a national scale via the Internet (in the case of affirmative misrepresentations) or concealed based on decisions made at Defendants' corporate offices *in Maryland*.

presentation materials were designed and prepared in Iowa" and "Iowa is the state from which the alleged nationwide fraudulent scheme was orchestrated"); *Cunningham v. PFL Life Ins. Co.*, 42 F. Supp. 2d 872, 883 (N.D. Iowa 1999) (under Florida choice of law test, Iowa law applied because a substantial part of the fraudulent conduct occurred and defendants were headquartered in Iowa, even though plaintiffs actually purchased policies in Florida); *Elkins v. Equitable Life Ins. Co.*, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998) (applying Iowa law because it was "the state in which [the defendant] conducted its nationwide activities and from which its alleged campaign of fraud emanated"); *In re Kirschner Medical Corp. Secs. Litig.*, 139 F.R.D. 74, 84 (D. Md. 1991) (applying Maryland law because "many of the alleged false and misleading statements upon which the [complaint] is based were prepared and disseminated from Maryland").

This Court should follow the wealth of cases that apply the law of the state in which the defective product was designed, or where the corporate decisions or policies implicated by the complaint arose. As in those cases, all of the relevant conduct giving rise to Plaintiff's claims emanated from Maryland, while only contested or insignificant facts favor application of Florida law. Accordingly, application of the "significant relationship" test establishes that Plaintiff properly brought his claims under Maryland law.

**B.    The Court Should Refrain from Conducting a Comprehensive Choice of Law Analysis Until the Close of Discovery.**

In support of its argument for the application of Florida law, Defendants rely on numerous "facts" that are not alleged in the pleadings, including Defendants' own representations that: (1) Plaintiff "presumably" purchased *Oblivion* in Florida, (2) Plaintiff's "receipt and reliance" of Defendants' misrepresentations occurred in Florida, and (3) Plaintiff's copy of *Oblivion* is located in Florida. (MTD at 6-7.) While such factors are plausibly relevant to the choice of law analysis, they are not alleged in the complaint and the Court cannot properly consider them in the context of a motion to dismiss. Similarly, Plaintiff alleges numerous facts that are relevant to the choice of law analysis and favor application of Maryland law, but which ultimately will be supported or refuted only after discovery. Given that discovery

is necessary to aid the Court and the Parties in conducting a complete choice of law analysis, this Court should decline to address Defendants' arguments at this stage in the proceedings.

Numerous courts have held that it is premature to consider choice of law disputes at the motion to dismiss stage, especially where the analysis may turn on disputed or unknown facts. *See Court-Appointed Receiver of Lancer Mgmt. Group LLC v. Lauer*, 2010 WL 1372442 at *7 (S.D. Fla. Mar. 31, 2010) (finding that, at the motion to dismiss stage, "it is premature to undertake a choice of law analysis"); *In re ConAgra Peanut Butter Prods. Liab. Litig.*, 2008 WL 2132233 at *1 (N.D. Ga. May 21, 2008) ("it is premature to conduct a rigorous choice of law analysis at [the motion to dismiss] stage"); *Speedmark Transp., Inc. v. Mui*, 778 F. Supp. 2d 439 (S.D.N.Y. 2011) (a "choice-of-law determination is premature on this motion to dismiss, since the record lacks facts necessary to conduct the context-specific" analysis); *Snyder v. Farnam Companies, Inc.*, 2011 WL 2112500 at *5 (D.N.J. May 26, 2011) ("Due to the factual inquiry that may be necessary to properly weigh the Restatement factors, it can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss stage when little or no discovery has taken place"); *Arroyo v. Milton Academy*, 2011 WL 65938, at *3 (D. Vt. Jan 10, 2011) (declining to conduct "choice-of law analysis" because "it would be premature to resolve these complex questions before the completion of discovery"); *Graboff v. The Collern Firm*, 2010 WL 4456923 at *8 (E.D. Pa. Nov. 8, 2010) ("conducting a . . . choice of law analysis is fact-intensive and context specific. Due to the complexity of this analysis, when confronted with a choice of law issue at the motion to dismiss stage, courts . . . have concluded that it is more appropriate to address the issue at a later stage in the proceedings.").

Here, the choice of law analysis is likely to turn on disputed or unknown facts, such as information regarding the location of critical decisions made by Defendants in connection with Defendants' advertising campaign and to conceal the Animation defect, the design and manufacture of the *Oblivion* video game, and Defendants' identification, response to, and failure to disclose the Animation Defect, among other things.

Moreover, resolving Defendants' choice of law arguments at this stage in the proceedings would not materially advance the litigation, and could actually impede proceedings if subsequent discovery demonstrates that the Court's choice of law decision was reached based upon inaccurate factual information. And, glaringly absent from Defendants' argument is any attempt to demonstrate that Plaintiff's claims would fail under Florida substantive law, such that a decision on the issue would result in a dismissal of Plaintiff's claims on the merits. Defendants' silence in this regard says more than reams of briefing ever could. The choice of law determination is better left for another day.

### C.    Plaintiff Properly Alleges Claims Under Both Maryland and Florida Law.

Regardless of whether the Court applies Maryland or Florida law in this case, Plaintiff's claims are properly pleaded under both. In conclusory fashion, Defendants argue that Plaintiff's claims should be dismissed because they are purportedly "improperly alleged under Maryland law." But, Defendants make no attempt to argue that Plaintiff's substantive claims fail under Florida law. No surprise, that is because Plaintiff's allegations satisfy the elements necessary to state claims for breach of implied warranty of merchantability, unjust enrichment, and Florida's analogous consumer protection statute, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").[4] Accordingly, even if the Court were to apply Florida law to this dispute, Plaintiff's complaint still survives Defendants' motion to dismiss.

#### 1.    Unjust Enrichment under Florida Law

To state a claim for unjust enrichment under Florida law, a complaint must demonstrate that: "(1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for

---

[4]     Florida does not have a statutory scheme akin to Maryland's false advertising law.  That aside, Defendants fail to identify any authority to support its contention that Maryland's false advertising law does not permit a private right of action. While Defendants correctly note that the Maryland Attorney General is permitted to bring suit under the statute, Defendants do not (and cannot) demonstrate that the Attorney General has the *exclusive* right to enforce the Maryland False Advertising Law. Because Defendants entirely fail to provide any support for their sole attack on Count II of the complaint, Plaintiff's claim under § 11-701 should not be dismissed.

the defendant to retain the benefit without paying the value thereof to the plaintiff. *Hillman Const. Corp. v. Walner*, 636 So. 2d 576, 577 (Fla. Ct. App. 1994). Similarly, under Maryland law, a plaintiff must allege: "[1] a benefit conferred upon the defendant by the plaintiff; [2] an appreciation or knowledge by the defendant of the benefit; and [3] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Bennett Heating & Air Conditioning, Inc. v. NationsBank of Maryland*, 654 A.2d 949, 956 (Md. App. 1995).

Plaintiff's allegations squarely meet the elements required to state a claim for unjust enrichment under both Maryland and Florida law. Specifically, Plaintiff alleges that: (1) "Plaintiff and the Class have conferred a benefit upon Defendants" by purchasing the *Oblivion* video game when they otherwise would not have and that "Defendants have received and retained that money belonging to Plaintiff and the Class" as a result of their misrepresentations and omissions regarding the Animation Defect, (Compl. ¶ 81); (2) "Defendants appreciate or have knowledge of said benefit" since they collected the ill-gotten gains despite being aware of and actively concealing the Animation Defect, (Compl. ¶ 82); and, (3) "[u]nder principles of equity and good conscience, Defendants should not be permitted to retain [the] money belonging to Plaintiff and the Class that [they] unjustly received as a result of [their unlawful] actions." (Compl. ¶ 83.)

### 2.      Breach of Implied Warranty of Merchantability Under Florida Law

Under Florida law, to establish a claim for breach of the implied warranty of merchantability, a plaintiff must demonstrate: "(1) That the plaintiff was a foreseeable user of the product; (2) That the product was being used in the intended manner at the time of the injury; (3) That the product was defective when transferred from the warrantor; [and] (4) That the defect caused the injury." *Amoroso v. Samuel Friedland Family Enterprises*, 604 So. 2d 827, 833 (Fla. Ct. App. 1992).

Similarly, it is clear that, under the Maryland Uniform Commercial Code, codified at Maryland

Code (1975, 2002 Replacement Vol.) § 2-314 of the Commercial Law Article, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *Lloyd v. General Motors Corp.*, 397 Md. 108, 157 (2007). In order to recover for a breach of implied warranty of merchantability, the plaintiff must establish that: (1) a warranty existed; (2) the product did not conform to the warranty and thus the warranty was breached; and (3) the breach of warranty by the seller was the cause of the injury to the user or third party. *Lloyd*, 397 Md. at 157.

In this case, Plaintiff has sufficiently alleged a cause of action for Defendants' breach of the implied warranty of merchantability under both Maryland and Florida law.  First, Plaintiff alleges that "[a]t the time Defendants designed, manufactured, and sold" the *Oblivion* video game, they knew of the uses for which it was intended—namely, uninterrupted gameplay by Plaintiff and the Class—and impliedly warranted that "it would be of merchantable quality and fit for [that] intended use."  (Compl. ¶ 77.)  Specifically, Defendants warranted that the game "would offer free-form, open-ended, expansive gameplay, and be free of inherent defects that prevented such gameplay."  (Compl. ¶ 78.)  Defendants breached that warranty by developing and distributing the *Oblivion* video game, which they knew "suffered from the Animation Defect[.]"  (Compl. ¶ 78.)  As a result Defendants' breach of warranty, "Plaintiff and the Class have suffered damages, including the loss of monies paid to purchase the *Oblivion* video game, and/or the difference in value between an Oblivion video game with and without the Animation Defect."  (Compl. ¶ 79.)  Nothing more need be pleaded to maintain Plaintiff's cause of action for breach of warranty, regardless of the substantive law that is applied.

### 3.      Violation of Florida's Deceptive and Unfair Trade Practices Act

"A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Lustig v. Bear Stearns Residential Mortg. Corp.,* 411 Fed. Appx. 224, 225 (11th Cir. 2011) (quoting *City First Mortg. Corp. v. Barton,* 988 So.2d 82, 86 (Fla. Ct. App.

2008)).

Likewise, Maryland's Consumer Protection Act (the "CPA") prohibits any person or entity from engaging in any unfair or deceptive trade practices, "including, among other things, '[d]eception, fraud, ... or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with ... [t]he promotion or sale of any consumer goods ... or consumer service." *Smart v. Decision One Mortg. Co., LLC*, 2011 WL 829212 (D. Md. Mar. 7, 2011) (citing Md. Code Ann., Comm. Law §§ 13-101, *et seq.*). Thus, in order to maintain a cause of action under the CPA, a consumer must allege that (1) a defendant performed one or more deceptive or unfair acts or practices with the intention that consumers rely thereupon, (2) the consumer relied upon such act or practice, and (3) as a result of that reliance, the consumer suffered "injury or loss." *Id.*, *see also Lloyd*, 397 Md. at 148, (citing Md. Code Ann., Comm. Law § 13-408(a)).

Once again, Plaintiff's allegations satisfy both Maryland and Florida law.  According to Plaintiff's complaint, Defendants engaged in unfair and deceptive trade practices inasmuch as they designed and disseminated marketing and advertising materials for *Oblivion* which, *inter alia*, (1) intentionally failed to disclose the existence of the Animation Defect, and (2) falsely represented that Plaintiff and the Class could enjoy "expansive, open-ended [and] unlimited gameplay," when in reality, they could not.  (Compl. ¶¶ 64-65.)  Plaintiff and the Class relied on Defendants' material misrepresentations and omissions and, as a result, "suffered damages in the form of monies paid to purchase the *Oblivion* video game, and/or the difference in value between [the game] with and without the Animation Defect."  (Compl. ¶ 66.)

Accordingly, Plaintiff has stated claims for Defendants' breach of implied warranty of merchantability, unjust enrichment, and consumer fraud under both Maryland and Florida law. The motion to dismiss should be denied on that basis as well.

13

## II.      The Complaint Amply Meets the Pleading Requirements of Rule 9(b).

### A.      As a Threshold Matter, Plaintiff's Complaint Only Partially Sounds in Fraud.

Citing to several cases involving the FDUTPA—a claim that Plaintiff does not even assert in the complaint—Defendants improperly argue that the entire complaint should be subject to the heightened pleading requirements of Fed. R. Civ. P. 9(b). (MTD at 8-9). However, under any applicable law (including FDUTPA), only the "circumstances constituting fraud" must be stated with particularity under Rule 9(b). *Haley v. Corcoran*, 659 F. Supp. 2d 714, 721 (D. Md. 2009).

While it is true that some of Plaintiff's specific allegations sound in fraud, the complaint contains numerous allegations that are not fraud-based and are therefore not subject to heightened pleading requirements. In particular, courts are clear that claims for unjust enrichment should not be subject to Rule 9(b) pleading standards. *See Silver v. Digges*, 2006 WL 2024935, at *3 (M.D. Fla. Jul. 17, 2006) ("the Court is unaware of any authority imposing a heightened pleading requirement for claims of unjust enrichment"). Similarly, Plaintiff's claim for breach of implied warranty of merchantability contains no allegations that sound in fraud. *See Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 255 (D. Md. 2000) (noting that "Defendants have cited no case in which a court has held that a party asserting a claim of breach of implied warranty must comply with the requirements of Rule 9(b)," and refusing to do so therein).

As described more fully above, Plaintiff's claims for unjust enrichment and breach of the implied warranty of merchantability stand independently from the fraud-based allegations contained elsewhere in the complaint.  Because the facts giving rise to these claims are not based in fraud, such facts need not meet the particularity standards of Rule 9(b).

### B.      The Allegations that Sound in Fraud Satisfy Rule 9(b).

To the extent that specific allegations in the complaint do sound in fraud, Plaintiff has met the particularity requirements of pleading such facts under Rule 9(b). Rule 9(b) requires that "in all averments of

14

fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is to "ensure that the allegations of fraud are specific enough to provide sufficient notice of the acts complained of" and to "eliminate those complaints filed as a pretext for discovery of unknown wrongs." *In re Eagle Building Technologies, Inc., Secs. Litig.*, 319 F. Supp. 2d 1318, 1325 (S. D. Fla. 2004). However, "Rule 9(b) should not be read to abrogate Rule 8 … and a court considering a motion to dismiss for failure to plead fraud with particularity should always be careful to harmonize the directive of Rule 9(b) with the broader policy of notice pleading." *Friedlander v. Nims*, 755 F.2d 810, 813 n. 3 (11th Cir. 1985); *see also Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997) (Rule 9(b) "must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires a plaintiff to plead only a short, plain statement of the grounds upon which he is entitled to relief."). While heightened pleading requires "more than a bare assertion that such a cause of action exist[s]," it "does not require the elucidation of every detail of the alleged fraud." *Johnson v. Wheeler*, 492 F. Supp. 2d 492, 509 (D. Md. 2007).

Generally, Rule 9(b) is satisfied if the complaint sets forth: "(1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement and the person responsible for making it (or, in the case of omissions, not making) same; (3) the content of such statements and the manner in which they mislead the plaintiff; and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001); *see also Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) ("[U]nder Rule 9(b), it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent.")

In the case of fraud based on omissions, the "nondisclosure of a material fact may be deemed fraudulent where the other party does not have equal opportunity to become apprised of the fact." *Miera v.*

*National City Mortgage*, 2009 WL 2495757, at *3 (M.D. Fla. Aug. 13, 2009); *see also Smith v. Capital One Auto Finance, Inc.*, 2011 WL 3328565, at * 3 (D. Md. Aug. 2, 2011) (in the context of a claim under the Maryland Consumer Protection Act, finding that Rule 9(b) heightened pleading requirements cannot be applied to allegations of omissions, because omissions cannot be described in terms of the "time, place, and contents of the misrepresentation or the identity of the person making the misrepresentation"); *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007) ("Clearly, a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim").

Plaintiff's allegations are more than sufficient to provide Defendants with "sufficient notice of the acts complained of" by Plaintiff and thus satisfy Rule 9(b). Critically, while Defendants base their attack on "two alleged misrepresentations" that purportedly fail to meet Rule 9(b) pleading standards, Defendants entirely fail to address the material omission at the heart of this case—that Defendants were aware of, but intentionally failed to disclose the existence of the Animation Defect and its effect on *Oblivion's* gameplay. Plaintiff alleges detailed facts about this critical omission, which readily satisfy Rule 9(b).

Specifically, Plaintiff alleges that Defendants knowingly failed to disclose the existence of the Animation Defect and its crippling effect on gameplay. (Compl. ¶¶ 31-37.) Plaintiff further alleges that Defendants subsequently admitted that they were aware of the Animation Defect prior to the date on which Plaintiff purchased the *Oblivion* video game, but that they failed to address the defect or provide notice to consumers of the issue. (*Id.* ¶¶ 32-34.) By alleging precisely what facts Defendants failed to disclose (the Animation Defect and its corresponding effect on gameplay), precisely when Defendants admitted that they were aware of these facts (March, 2007), and precisely what action Plaintiff would have taken had he been made aware of the facts (he would not have purchased the *Oblivion* video game), Plaintiff provides a level of detail that more than satisfies Rule 9(b)'s particularity requirements.

16

Further, the existence of the Animation Defect was a fact uniquely within Defendants' knowledge, Plaintiff did not have an equal opportunity to become apprised of the fact, and Plaintiff had no reason to suspect that the game suffered from this universal defect. (*Id.* ¶ 43.) Indeed, it is well settled that Rule 9(b)'s heightened pleading standard is less stringently applied when specific "factual information [about the fraud] is peculiarly within the defendant's knowledge or control." *Hill v. Morehouse Med. Assoc. Inc.*, 20-3 WL 22019936 (11th Cir. 2003); *see also United States ex rel. Russell v. Epic Healthcare Mgmt. Group,* 193 F.3d 304, 308 (5th Cir.1999) ("We have held that when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the Rule 9(b) standard is relaxed....").

Defendants' claim that the complaint "vaguely alludes to two alleged misrepresentations" is simply not true. In the complaint, Plaintiff alleges that at all times material hereto, Defendants: (1) published a widely-distributed online description of *Oblivion* claiming that *Oblivion* offered "open-ended gameplay" in an "enormous world" that "allow[ed] players to explore at their own pace[,]" (Compl. ¶ 12); (2) represented in the instruction manual of the *Oblivion* video game that the game "offers unlimited possibilities[,]" (Compl. ¶ 13); and (3) published, on Bethesda's official blog, that a player could play over "1000 hours" with a single *Oblivion* character and save file. (Compl. ¶ 18.) Accordingly, Plaintiff alleges precisely what misrepresentations were made, the precise content of each misrepresentation, the location of each statement, and the timeframe that such statements were made. Nothing more need be pleaded to satisfy Rule 9(b).

Finally, Defendants' claim that Plaintiff "does not identify even a single specific misrepresentation or omission made by Defendants that misled him" is contradicted by the express allegations of the complaint. (*See* MTD at 11.) Plaintiff specifically alleges that, prior to purchasing *Oblivion*, he viewed Defendants' advertisements and representations about the scope of longevity of the gameplay purportedly featured in the game, and that the gameplay was the primary reason that Plaintiff purchased the game. (Compl. ¶ 42.) Moreover, Plaintiff alleges that he was not aware of the existence of the Animation Defect or

its effect on gameplay prior to purchasing *Oblivion*. (*Id.* ¶ 43.) As a result, the complaint is abundantly clear that Plaintiff was misled about the gameplay featured in the *Oblivion* video game, and that he would not have purchased the game had he known of the existence of the Animation Defect. (Compl. ¶ 44.)

## III.   Defendants' Misrepresentations Simply do not Constitute Non-Actionable Puffery.

Defendants' claim that their misrepresentations amount to nothing more than "non-actionable puffery" is not based in reality. Puffing is defined as the "expression of an exaggerated opinion—as opposed to a factual misrepresentation—with the intent to sell a good or service … Although there is some leeway in puffing goods, a seller may not misrepresent them or say that they have attributes that they do not possess." BLACK'S LAW DICTIONARY, "Puffing" (9th ed. 2009). The concept of puffery typically arises in the context of securities fraud, where immaterial "forward looking" statements of "corporate optimism" and "generalized statements of optimism that are not capable of objective verification" cannot typically give rise to a federal securities law claim. *In re Winn-Dixie Stores, Inc. Secs. Litig.*, 531 F. Supp. 2d 1334, 1343 (M.D. Fla. 2007).

Here, Defendants attributed specific characteristics and qualities to the *Oblivion* video game that had actual and tangible meanings to the targeted class of consumers who viewed Defendants' statements. As detailed herein, Defendants repeatedly described the gameplay of *Oblivion* as "open-ended," the gaming world as "enormous" and offering "unlimited possibilities" for "wandering and exploring," and promised gamers that they could enjoy the game "at their own pace." (Compl. ¶¶ 12-13.) These statements are capable of objective verification, and were indeed found to be untrue as a result of the Animation Defect— the gameplay loses its "open-ended" nature once the Animation Defect occurs, and the gaming world is manifestly limited by the game's inability to process any necessary animations. (Compl. ¶¶ 22-26.) Accordingly, Defendants' statements are not the type of vague and generalized statements of opinion that are properly characterized as non-actionable puffery.

The sole case relied upon by Defendants illustrates the difference between non-actionable puffery and the factual misstatements at issue in this case. (*See* MTD at 12 (citing *Gentry v. Harborage Cottages-Stuart, LLP*, 602 F. Supp. 2d 1239 (S.D. Fla. 2009)). In *Gentry*, the court considered whether statements made within promotional materials for a new condominium development could form the basis of the plaintiff's statutory anti-fraud claims. The court determined that statements describing the condominiums as a "luxury development" of the "highest caliber," "extraordinary," and offering "finishes of exceptional quality," were mere opinions and exaggerations that did not attribute a sufficiently specific quality to the condominiums to support plaintiff's fraud claims. *Id.* at 1252-53. In contrast, the defendant's use of a map of the condominium site that depicted an open area labeled "Future Development," but which actually contained two large occupied buildings, constituted both a material misrepresentation and omission of a material fact. *Id.* at 1253-54. Unlike the developer's generalized, positive characterizations of the condominiums, the site map depicted the condominium development in a specific, inaccurate manner and thus violated the anti-fraud provisions of Interstate Land Sales Full Disclosure Act. *Id.* at 1254-55.

The misrepresentations identified in Plaintiff's complaint are much more akin to the fact-based, actionable misstatements made by the defendant in *Gentry* than the puffing "exaggerations" at issue in that case. Like the defendant in *Gentry*, Defendants attributed specific, verifiable characteristics to the *Oblivion* video game that were rendered untrue as a result of the Animation Defect. Accordingly, *Gentry* actually cuts against Defendants' efforts to characterize its statements as non-actionable puffery.

At most, any determination of whether Defendants' misrepresentations should be classified as "puffing" rather than actionable fraud presents a factual issue that is properly left to the trier of fact. *See Pinellas Suncoast Transit Authority v. Mincom, Inc.*, 2007 WL 2225812 (M.D. Fla. July 31, 2007) ("whether particular statements would constitute mere puffing as opposed to misrepresentations of material fact, resulting in actionable fraud, would be reserved as a determination to be made by a trier of fact");

*Belloco v. Curd*, 2005 WL 2675022, at *3 (M.D. Fla. Oct. 20, 2005) ("materiality is not typically resolved at the motion to dismiss stage unless the misrepresentations are so obviously unimportant to an investor that reasonable minds cannot differ"). Accordingly, this Court should not answer, as a matter of law, the factual question that Defendants raise in its motion to dismiss.

## CONCLUSION

For the reasons detailed herein, Defendants' motion to dismiss should be denied in its entirety. Alternatively, if the court grants the motion to dismiss in whole or in part, Plaintiff requests leave to file an appropriate amended complaint.

Respectfully submitted,

Dated: October 11, 2011

LAWRENCE WALEWSKI, individually and on behalf of all others similarly situated,

By:     /s/ Steven Teppler

One of Mr. Walewski's Attorneys

Steven W. Teppler
steppler@edelson.com
Florida Bar Number 14787
EDELSON MCGUIRE LLC
5715 Firestone Court
Sarasota, FL 34238
Telephone: (941) 487-0050
Facsimile: (312) 572-7210

Jay Edelson
jedelson@edelson.com
Rafey Balabanian
rbalabanian@edelson.com
Bradley Baglien
bbaglien@edelson.com
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60604
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

20

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Opposition to Defendants' Motion to Dismiss and Incorporated Memorandum of Law was served upon all counsel of record through the Court's ECF System on October 11, 2011.

/s/ Steven Teppler
EDELSON MCGUIRE LLC
5715 Firestone Court
Sarasota, FL 34238
Telephone: (941) 487-0050
Facsimile: (312) 572-7210

*Attorney for Plaintiff Lawrence Walewski*

1