# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

LAWRENCE WALEWSKI, individually and on behalf
of all others similarly situated,

    *Plaintiff*,           Case No. 6:11-cv-01178-JA-DAB

v.

ZENIMAX MEDIA, INC., a Delaware Corporation,
and BETHESDA SOFTWORKS, LLC, a Delaware
Limited Liability Company,

    *Defendants*,
_____/

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

   Plaintiff Lawrence Walewski, through his undersigned counsel, hereby respectfully

moves this Court for an Order certifying this case as a class action pursuant to Federal Rule of

Civil Procedure 23(b)(2) and (b)(3) and Local Rule 4.04.  While Plaintiff submits this Motion in

order to comply with Local Rule 4.04(b)'s timing requirements, Plaintiff requests that, should the

Court deny Defendants' pending motion to dismiss Plaintiff's complaint, the Court postpone

ruling on Plaintiff's Motion for Class Certification until the completion of discovery on class-

wide issues pursuant to Local Rule 4.04(c).[1]  In support of the instant motion, Plaintiff states as

follows:

**I.**  **Introduction**

   1.  Plaintiff has brought this putative class action on behalf of himself and all other

_____

[1]  Pursuant to Plaintiff's request, the parties participated in an initial Rule 26(f) conference
on October 5, 2011 and agreed to a proposed discovery plan.  At that time, the parties agreed to
proceed concurrently with class and merits discovery, and to conclude such discovery by
October 1, 2012.  Baglien Decl. ¶ 3.

similarly situated persons who have purchased *The Elder Scrolls IV: Oblivion* video game on the Xbox 360 and PlayStation 3 gaming consoles as well as Windows-based personal computers.  As alleged in detail in Plaintiff's complaint, each copy *Oblivion* suffers from a serious and material defect (the "Animation Defect") that occurs suddenly and unexpectedly after only moderate use of the game.  (Compl. ¶ 20.)  Once manifested, the Animation Defect causes all "secondary" animations to freeze and prevents players from progressing in the game, forcing players to forfeit all progress, erase their existing game and restart from the beginning of the game.  (*Id.* ¶¶ 23-24.)  While Defendants have long been aware of the Animation Defect and its impact on the *Oblivion* video game, they have refused to remedy the defect or to inform future purchasers of the inherent defects in the game.  (*Id.* ¶¶ 31-35.)

2.     As a result of Defendants' conduct, Plaintiff has alleged violations of the Maryland Deceptive Practices Act and the Maryland False Advertising Law, as well as common law claims for Breach of the Implied Warranty of Merchantability and Unjust Enrichment.  In this Motion, Plaintiff respectfully requests that the Court allow Plaintiff to pursue these statutory and common law claims on a class-wide basis against Defendants.  As detailed herein, Plaintiff's claims turn on common issues of fact relating to Defendants' conduct and a universal defect in the *Oblivion* video game, which has been purchased by millions of consumers.  Because Plaintiff satisfies all of the requirements of Rule 23, this case should proceed as a class action.

## II.    The Proposed Class

3.     Plaintiff moves to certify this case as a class action on behalf of a similarly situated class defined as follows:

> All persons or entities residing in the United States who purchased any version of the *Elder Scrolls IV: Oblivion* video game.

Certification of this class of individuals is the superior, if not the only, way to ensure that the merits of Plaintiff's and class members' claims will be fully adjudicated.  Moreover, Plaintiff's proposed class definition properly defines an identifiable class that can be ascertained by reference to objective criteria.

**III.**    **Fed. R. Civ. P. 23's Requirements for Certification**

4.    In determining whether to certify a class, the Court does not inquire into the merits of the plaintiff's claims.  *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).  As such, for purposes of considering a motion for class certification, the substantive allegations of the complaint are generally assumed to be true and it is also assumed that cognizable claims are stated.  *See, e.g., Drayton v. Western Auto Supply Co.*, No. 01-10415, 2002 WL 32508918, at * 6 (11th Cir. Mar. 11, 2002); *Neumont v. Monroe County, Fla.*, 198 F.R.D. 554, 557 (S.D. Fla. 2000).

5.    A party seeking certification bears the burden of showing that the class is ascertainable and meets each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b).  *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1025 (11th Cir. 2001); *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000).  Rule 23(a) enumerates four prerequisites for class certification:  (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.  *Valley Drug co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003).  Additionally, Rule 23(b)(3) requires that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).  Rule 23(b)(2) allows for certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is

appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Plaintiff must

affirmatively demonstrate compliance with the Rule. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

2541, 2551 (2011).

6.      As shown below, the proposed class in this case satisfies each of Rule 23(a)'s

prerequisites and the requirements for certification under Rules 23(b)(2) and (b)(3).

## IV.     The Proposed Class Satisfies Rule 23(a)'s Requirements

7.      Numerosity is met when "the class is so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1). The Court may "make common sense assumptions in

order to find support for numerosity." *Hively v. Northlake Foods, Inc.*, 191 F.R.D. 661, 666

(M.D. Fla. 2000) (citing *Evans v. United States Pipe & Foundry*, 696 F.2d 925, 930 (11th Cir.

1983)). "It is not necessary that the precise number of class members be known." *Id.* Courts

within this Circuit have held that classes consisting of 38 and 40 members are sufficiently large

to render joinder impracticable. *See Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL

1585970 (S.D. Fla. 2009); *Moreno-Espinosa v. J& J Ag. Products, Inc.*, 247 F.R.D. 686, 688

(S.D. Fla. 2007).

8.      In this case, the Court need not exercise its assumptive abilities, as Plaintiff

alleges—and discovery will show—that the Class consists of "millions of members" who have

purchased the *Oblivion* video game on either the Xbox 360 or PlayStation 3 gaming consoles or

on Windows-based personal computers. (*See* Compl. ¶ 52; *see also* Defendants' Motion to

Dismiss, Dkt. No. 25, pp. 1-2 (noting that *Oblivion* was released to "worldwide critical acclaim"

and continues to "have a large, global fan base"))[2]. Accordingly, the proposed class readily satisfies the numerosity requirement. *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands ... In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

9.       The second threshold to certification requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the Supreme Court recently explained in *Dukes*, "[w]hat matters to class certification. . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551 (citing RICHARD A. NAGAREDA, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 131-132 (2009)). Thus, Rule 23(a)(2)'s commonality requirement may be satisfied where there exists a single common issue of law or fact, even if the issues are not identical. *See In re Managed Care Litig.*, 209 F.R.D. 678, 682 (S.D. Fla. 2002) ("as Rule 23(a) explicitly states, a court need only find a single common issue of law or fact to satisfy the commonality requirement."); *Access Now, Inc. v. Ambulatory Surgery Center Group, Ltd.*, 197 F.R.D. 522, 526, n.2 (S.D. Fla. 2000); *In re First Alliance Mortgage Co.*, 471 F.3d 977, 990-91 (9th Cir. 2006). Ultimately, the "burden to meet the commonality requirement of Rule 23(a) is relatively light." *Napoles-Arcila v. Pero Family Farms, LLC*, 2009 WL 1585970, at *6 (S.D. Fla. Jun. 4, 2009) (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009).

10.       As alleged in this case, all members of the class share common questions of fact

---

[2]       The Wikipedia entry for the *Oblivion* video game states that Defendants had sold "over three million copies [of the game] by January 2007."
http://en.wikipedia.org/wiki/The_Elder_Scrolls_IV:_Oblivion.

that predominate over issues affecting only individual members of the class.  Those common

factual issues for the class include: (1) whether the *Oblivion* video game failed to conform to

Defendants' advertised product specifications; (2) whether Defendants made false or misleading

statements about the scope, gameplay, or capabilities of the *Oblivion* game; (3) whether

Defendants knowingly concealed the existence of the Animation defect or other defects affecting

the game; (4) whether Defendants were able to, but refused to remedy or patch the Animation

Defect; and (5) whether the Animation Defect diminished the value of the *Oblivion* video game

to consumers.

11.     As Plaintiff alleges, each copy of *Oblivion* sold to consumers suffers from the

Animation Defect.  Once manifested, the Animation Defect causes a uniform set of technical

problems and Plaintiff and the members of the class were left with the same option to

temporarily address the defect—forfeit all progress in the game and restart.  Moreover,

Defendants misled purchasers of each version of *Oblivion* in the same way by using uniform

advertisements to describe the gameplay featured in the game and by uniformly failing to

disclose the existence or cause of the Animation Defect.

12.     These common factual questions lead to several legal questions common to

Plaintiff and the class, including: (1) whether Defendants' conduct violated the Maryland

Deceptive Practices Act (Md. Code Ann., Comm. Law § 13-101, *et seq.*); (2) whether

Defendants violated the Maryland False Advertising Law (Md. Code Ann., Comm. Law § 11-

701); (3) whether Defendants' conduct constituted a breach of the implied warranty of

merchantability; and (4) whether Defendants have been unjustly enriched as a result of their

wrongful activities.  Accordingly, the commonality requirement is met.

13.     Rule 23 next requires that Plaintiff's claims be typical of those of the proposed

class.  Fed. R. Civ. P. 23(a)(3).  The typicality requirement requires that the class representative

have the same interest and suffer the same injury as class members.  *Rosario-Guerrro v. Orange*

*Blossom Harvesting*, 265 F.R.D. 619, 627 (M.D. Fla. 2010) (citing *Busby v. JRHBW Realty, Inc.*,

513 F.3d 1314, 1322 (11th Cir. 2008).  The primary focus of the typicality requirement is that the

plaintiff will advance the interests of class members by advancing their own interests.  *Id.* (citing

*Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 698 (S.D. Fla. 2004).  Typicality "does not

mean that the claims of the class representative[s] must be identical or substantially identical to

those of the absent class members."  5 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON

CLASS ACTIONS, § 24.25 (3d ed. 1992).  Rather, the typicality requirement is satisfied if "the

claims or defenses of the class and class representative arise from the same event or pattern or

practice and are based on the same theory."  *Agan*, 222 F.R.D. at 698 (citing *Kornberg v.*

*Carnival cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984).  "The typicality requirement is

generally met if the class representative and the class members received the same unlawful

conduct, irrespective of whether the fact patterns that underlie each claim vary."  *Rosario-*

*Guerrro*, 265 F.R.D. at 627.

14.     In this case, Plaintiff and the proposed class experienced a common course of

conduct in which Defendants designed and released a uniformly defective game, made uniform,

false representations regarding the capabilities and gameplay of the *Oblivion* video game, failed

to conspicuously disclose the existence of the Animation Defect and its crippling effect on

gameplay, and refused to remedy the problems associated with the Animation Defect despite

numerous complaints from consumers.  As a result of Defendants' conduct, Plaintiff and the

proposed class are entitled to identical damages in the form of monies charged by Defendants for

the purchase of the *Oblivion* video game.  Accordingly, Plaintiff Walewski, by pursuing his own

claims, will advance the interests of the proposed class in satisfaction of Rule 23(a)(3)'s typicality requirement.

15.      The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  In this case, Mr. Walewski has the same interests as the proposed class members—each class member has allegedly purchased a defective copy of the *Oblivion* video game without knowledge of the Animation Defect, and was thus deceived about the capabilities and nature of gameplay of the *Oblivion* video game by Defendants.  Plaintiff's pursuit of this matter demonstrates that he will be a zealous advocate for the class.  Therefore, Plaintiff has no interests antagonistic to those of the proposed class.

16.      Moreover, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have had extensive experience in consumer class actions involving similar issues and that were of similar size, scope and complexity as the present case.  (*See* Firm Resume of Edelson McGuire LLC, a true and accurate copy of which is attached as Exhibit A to the Declaration of Bradley M. Baglien, filed concurrently herewith).  Accordingly, both Plaintiff and his counsel will adequately represent the interests of the class.

## V.      The Proposed Classes Satisfy Rule 23(b)(2) and b(3)'s Requirements

17.      Once the subsection (a) prerequisites are satisfied, a plaintiff seeking certification under Rule 23(b)(2) or 23(b)(3) must satisfy several additional requirements.  Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the proposed class, "so that final injunctive relief or corresponding declaratory relief is appropriate...." Fed. R. Civ. P. 23(b)(2); *Williams v. Mohawk Industries,*

*Inc.*, 568 F.3d 1350, 1359 (11th Cir. 2009).  In this case, Defendants made false and deceptive

statements regarding qualities of the *Oblivion* video game and omitted material facts about the

existence of the Animation Defect, which resulted in Plaintiff and members of the class

unwittingly purchasing a defective product.  (Compl. ¶¶ 10-50.)  Thus, Defendants acted on

grounds generally applicable to the class as a whole, making final injunctive relief necessary to

protect Plaintiff and the class from such conduct in the future, and satisfying the requirements of

Rule 23(b)(2).

18.    Rule 23(b)(3) provides that a class action may be maintained where the questions

of law and fact common to members of the proposed class predominate over any questions

affecting only individual members.  Fed. R. Civ. P 23(b)(3); *Babineau v. Federal Exp. Corp.*,

576 F.3d 1183, 1191 (11th Cir. 2009).  Common issues of law and fact predominate "if they

have a direct impact on every class member's effort to establish liability and on every class

member's entitlement to injunctive and monetary relief."  *Klay v. Humana, Inc.*, 382 F.3d 1241,

1255 (11th Cir. 2004); *see also Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir.

2003) (when "there are genuinely common issues, issues identical across all the claimants, issues

moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated

proceedings, then it makes good sense, especially when the class is large, to resolve those issues

on one fell swoop"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ("When

common questions present a significant aspect of the case and they can be resolved for all

members of the class in a single adjudication, there is clear justification for handling the dispute

on a representative rather than an individual basis.").

19.    In this case, the proposed claims of the class—as well as those from Plaintiff

Walewski—all arise from Defendants' uniform conduct in developing and distributing a

defective product, engaging in false and misleading advertising, failing to adequately disclose the existence and effect of the Animation Defect on each copy of the *Oblivion* video game, and failing to provide a remedy once consumers experienced the defect.  Defendants' conduct ultimately resulted in Plaintiff and each member of the class purchasing the *Oblivion* video game without knowledge of the Animation Defect, and without any available means to fix the problem.  Defendants' actions toward each member of the class were conducted in precisely the same manner and therefore entitled each member of the class to nearly identical and easily ascertainable damages.  As such, the common questions at issue in this case predominate over any individual issues that may exist.

20.     Rule 23(b)(3) further requires that the class action mechanism be superior to the other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P 23(b)(3).  The "purpose of the superiority requirement is consistent with the overall goals of Rule 23, which is to assure that the class action is the most efficient, effective and economic means of settling the controversy." *Walco Investments, Inc. v. Thenen*, 168 F.R.D. 315, 337 (S.D. Fla. 1996) (citing 7A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure*: Civil § 1777 at p. 519 (1986)).  "Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).

21.     This case is particularly suited for class treatment because the claims of Plaintiff and the proposed class involve Defendants' uniform conduct that resulted in identical violations of state statutes and common law.  In addition, absent a class action, most members of the class would find the cost of litigating their claims to be prohibitive and such multiple individual actions would be judicially inefficient.  Were this case not to proceed on a class-wide basis, it is unlikely that any significant number of class members would be able to obtain redress or that

Defendants would willingly remedy the Animation Defect or the damages suffered as a result of the defect. Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

22. For the reasons stated above, and which will be borne out by class discovery, this case is appropriate for class certification. Plaintiff hereby requests that the Court reserve its ruling on the instant motion and allow for discovery to take place on class-wide issues as agreed by the parties, at the conclusion of which, Plaintiff will file a fulsome memorandum in support of this motion detailing the appropriateness of class certification and asking the Court to rule at that time.[3]

**WHEREFORE**, Plaintiff Lawrence Walewski, individually and on behalf of the proposed class, respectfully requests that the Court (1) enter and postpone ruling on Plaintiff's Motion for Class Certification pursuant to Local Rule 4.04(c); (2) allow for the parties to engage in discovery on class-wide issues as agreed during the initial 26(f) conference; (3) grant Plaintiff leave to file a full memorandum in support of his Motion for Class Certification upon the conclusion of class-wide discovery; (4) grant Plaintiff's Motion for Class Certification after full briefing of the issues presented herein; and (5) provide all other and further relief that the Court deems equitable and just.

Dated: October 31, 2011                         Respectfully submitted,

                                                /s/ Steven Teppler
                                                One of Mr. Walewski's Attorneys

                                                EDELSON MCGUIRE LLC
                                                Steven Teppler
                                                steppler@edelson.com
                                                5715 Firestone Court

---

[3] Plaintiff reserves the right to amend the class definitions at the conclusion of class-wide discovery.

Sarasota, FL 34238
Telephone: (941) 487-0050
Facsimile: (312) 572-7210

Jay Edelson (admitted *pro hac vice*)
Rafey Balabanian (admitted *pro hac vice*)
Bradley Baglien (admitted *pro hac vice*)
350 North LaSalle, Suite 1300
Chicago, IL 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378
jedelson@edelson.com
rbalabanian@edelson.com
bbaglien@edelson.com

12

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on October 31, 2011, he caused the foregoing ***Motion for Class Certification*** to be electronically filed using the Court's CM/ECF system, which will send notification of filing to counsel of record for each party.


Dated:  October 31, 2011

/s/ Steven Teppler_____
EDELSON MCGUIRE LLC
5715 Firestone Court
Sarasota, FL 34238
Telephone: (941) 487-0050
Facsimile: (312) 572-7210

*Attorney for Plaintiff Lawrence Walewski*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

LAWRENCE WALEWSKI, individually and on behalf
of all others similarly situated,

        *Plaintiff*,                             Case No. 6:11-cv-01178-JA-DAB

v.

ZENIMAX MEDIA, INC., a Delaware Corporation,
and BETHESDA SOFTWORKS, LLC, a Delaware
Limited Liability Company,

        *Defendants*,

_____/

**DECLARATION OF BRADLEY M. BAGLIEN**

Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

1.      I am over the age of eighteen and am fully competent to make this declaration.  I make this declaration based upon personal knowledge unless otherwise indicated.

2.      I am an attorney at the law firm of Edelson McGuire LLC, which has been retained to represent the named Plaintiff in this matter, Lawrence Walewski.

3.      On October 5, 2011, I participated in a Rule 26(f) conference with Jason Nash, Esq., counsel for Defendants.  During the teleconference, counsel for the parties agreed to conduct class and merits based discovery concurrently, and agreed to conclude such discovery by October 1, 2012.  I memorialized the deadline in a proposed Case Management Report, which I sent via email to counsel for Defendants.  The report will be filed shortly with the Court.

4.      Attached hereto as Exhibit A is a true and accurate copy of the firm resume of Edelson McGuire LLC.  As shown in Exhibit A, Edelson McGuire specializes in consumer class actions and complex litigation, and has experience prosecuting class actions of similar nature,

scope, and complexity to the instant case.

5.      Edelson McGuire and its attorneys have been appointed Class Counsel in numerous actions throughout the country.

6.      To date, Edelson McGuire and its attorneys have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this matter, and will continue to do so throughout its pendency.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 29, 2011 at Chicago, Illinois.


/s/ Bradley M. Baglien

# EXHIBIT A

# EDELSON MCGUIRE, LLC FIRM RESUME

EDELSON MCGUIRE, LLC is a commercial litigation and legal consulting firm with attorneys in Illinois, Florida, New York, Colorado and California.  The firm has several primary practice groups:  plaintiffs' class action litigation (with a particular emphasis on technology cases), e-discovery and information technology, general commercial litigation and legal and political consulting.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts, and our peers.  Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class action suits, including the recent Thomas the Tank Engine lead paint class actions, the AT&T mobile content class actions, the home equity credit reduction cases, and privacy class actions involving T-Mobile, Facebook, and Netflix.  We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy and other issues.  Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally.  Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools and are asked to serve as testifying experts in cases involving class action and consumer issues.

## PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

EDELSON MCGUIRE is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on technology class actions, and has been called a "class action 'super firm'" by a national organization.  (Decalogue Society of Lawyers, Spring 2010.)  As has been recognized by federal courts, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar."  *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred:  "The proof of [the firm's] experience, reputation, and abilities is extraordinary. . . .  Each [of their cases] elaborates on the experience and unique success [they] have had in achieving leading roles in the area of 'technology consumer protection class actions.'"  (Arbitration award in mobile content class action settlement, August 6, 2009)  In appointing Edelson McGuire interim co-lead in one of the most high profile cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries."  -In Re JPMorgan Chase Home Equity Line of Credit Litig., No. 10 C 3647 (N.D.Ill, July 16, 2010).

We have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389 (N.D.Cal) (order appointing Edelson McGuire interim co-lead of privacy class action); see also In re Netflix Privacy Litigation, 5:11-cv-00379 (N.D.Cal. Aug. 12, 2011) (appointing Edelson McGuire sole lead counsel due, in part, to its "significant and particularly specialized expertise in electronic privacy litigation and class actions[.]")

We have several sub-specialties within our plaintiffs' class and mass action practice group:

**Consumer Technology Class Actions**:  We have established the key precedent under the Telephone Consumer Protection Act concerning text message spa, resulting in a $16,000,000 with 20th Century Fox, a $10,000,000 settlement with Simon & Schuster and a $7,000,000 settlement with Timberland Co.  We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

**Representative Settlements:**

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton County Sup. Ct., GA):  Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation.  "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Illinois):  Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges.  Case settled for $36 million.

- *Lozano v. 20th Century Fox,* No. 09-cv-05344 (N.D.Ill):  Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers.  Case settled for $16,000,000.

- *Gray v. Mobile Messenger Americas, Inc*., No. 08-CV-61089 (S.D. Fla.):  Lead counsel in case alleging unauthorized charges were placed on cell phone bills.  Case settled for $12,000,000.

- *Parone v. m-Qube, Inc.* No. 08  CH 15834 (Cook County, Illinois):  Lead counsel in class action settlement involving over 2 dozen cases alleging the imposition of unauthorized mobile content charges.  Case settled for $12,254,000.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.).  Co-lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $10,000,000.

- *Williams, et al. v. Motricity, Inc. et al.*, Case No. 09 CH 19089 (Cook County, Illinois):  Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges. Case settled for $9,000,000.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.):  Lead counsel in class action settlement alleging unauthorized mobile content

charges.  Case settled for $7,600,000.

- *Weinstein, et al. v. Airit2me, Inc.*, Case No. 06 C 0484 (N.D. Ill):  Co-lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $7,000,000.

- *Gresham v. Cellco Partnership*, No. BC 387729 (Los Angeles Sup. Ct.): Lead counsel in case alleging unauthorized charges were placed on cell phone bills.  Settlement provided class members with full refunds.

- *Duffy v. Nevis Mobile, LLC*, No. 08 CH 21376 (Cir. Ct. Cook County, IL): Class counsel in certified class action against mobile content provider for unauthorized mobile content charges resulting in default judgment over $10,000,000.

- *Zurakov v. Register.com,* No. 01-600703 (New York County, NY):  Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its deceptive practices in registering Internet domain names.  Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17,000,000.

***Privacy/Data Loss Class Actions***: We have litigated numerous class actions involving issues of first impression against Facebook, Apple, Netflix, Sony, Red Box, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft and others involving the failure to protect customers' private information, some resulting from security breaches.

**Representative Cases:**

- *In re Facebook Privacy Litigation,* 10-cv-02389 (N.D. Cal.):  Co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Netflix Privacy Litigation,*  5:11-cv-00379 (N.D.Cal.):  Sole lead counsel in suit alleging that defendant violated the Video Privacy Protection Act  by illegally retaining customer viewing information.

- *In re Zynga Privacy Litigation,* 10-cv-04680 (N.D. Cal.):  Co-lead counsel in suit against gaming application designer for the alleged unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *Gaos v. Google,* 10-cv-04809 (N.D. Cal.):  Part of a team of attorneys in suit alleging that Google unlawfully disclosed its users' search queries to website owners and other third parties.

- *In re Sidekick Litig. ,* No. C 09-04854-JW (N.D. Cal.):  Co-lead counsel in

cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Abrams v. Facebook, Inc.,* No. 07-05378 (N.D. Cal.):  Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

- *Desantis v. Sears,* 08 CH 00448 (Cook Cty):  Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the internet.

**Products Liability Class Actions**:  We have been appointed lead counsel in state and federal products liability class settlements, including a $30,000,000 settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32,000,000 settlement involving the largest pet food recall in the history of the United States and Canada.

**Representative Settlements:**

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cir. Ct. Cook County, IL):  Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains.  Settlement is valued at over $30,000,000 and provides class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litig.*, No. 07-2867 (D. N.J.):  Part of mediation team in class action involving largest pet food recall in United States history.  Settlement provided $24,000,000 common fund and $8,000,000 in charge backs.

**Banking Class Actions**:  Edelson McGuire has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks.  Its suits include claims that the certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs.

**Representative Cases:**

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, 10-cv-3647 (N.D. Ill.):  Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines.

- *Levin v. Citibank, N.A.*, C-09-0350 MMC (N.D. Cal.):  Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines.

- Testified or slated to testify at town halls and/or state hearings in Florida

and California on banks' suspensions of home credit lines.

• Settled numerous consumer class actions alleging fraud or other unconscionable behavior by banks and other lenders.

***General Consumer Protection Class Actions***:   We have successfully prosecuted countless class action suits against health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers.

**Representative Settlements:**

• *Pulcini v. Bally Total Fitness Corp*., No. 05 CH 10649 (Cir. Ct. Cook County, IL):  Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies.  A global settlement provided the class with over $40,000,000 in benefits, including cash payments, debt relief, and free health club services.

• *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cir. Ct. Cook County, IL):  Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11,000,000 and $14,000,000 in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

• *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill):  Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts.  The case settled in 2007, providing the class with full debt relief and return of all money collected.

• *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill):  Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts.  The case settled in 2007, providing the class with approximately $2,000,000 in debt relief.

• *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cir. Ct. Cook County, IL):  Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes.  The settlement provided the class with a collective award with a face value in excess of $3,000,000.

• *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cir. Ct. Cook County, IL):  Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes.  The settlement provided the class with a collective award with a face value between $1,600,000 and $4,800,000.

***Insurance Class Actions***:   We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin

insurance company for terminating the health insurance policies of groups of self-insureds.

**Representative Settlements:**

- *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D. Ill.):  One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class.  The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI):  Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds.  The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually settled the case ensuring that each class member would remain insured.

***Mass/Class Tort Cases***:  Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions.

**Representative Cases:**

- *Aaron v. Chicago Housing Authority,* 99 L 11738, (Cir. Ct. Cook County, IL):  Part of team representing a group of public housing residents bringing suit over contamination-related injuries.  Case settled on a mass basis for over $10,000,000.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.):  Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media.  Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International.  Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States.  We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from

partnership and business-to-business disputes, to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations. All of our attorneys have regularly practiced in state and federal trial and appellate courts.

## E-DISCOVERY AND INFORMATION TECHNOLOGY

Led by nationally-recognized eDiscovery expert Steven Teppler, our firm has taken the lead on eDiscovery issues including data protection, information technology, document management and retrieval, loss or destruction of information, and authentication and admissibility issues uniquely inherent to computer generated information. This includes spoliation allegations arising from acts of unauthorized or illegal data manipulation or alteration.

## LEGAL AND POLITICAL CONSULTING

Legal and political consulting is an area of practice that sets EDELSON MCGUIRE apart from other law firms. The firm advises on governmental and consumer issues and has helped its clients formulate business and legislative strategies, revise contractual and advertising material, and implement consumer protection strategies more generally. Our clients range from small Internet start-ups, to bricks and mortar companies, to one of the most trafficked Internet marketers, content and commerce firms in the country.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and Managing Partner of Edelson McGuire. He has been recognized as a leader in class actions, technology law, corporate compliance issues and consumer advocacy by his peers, the media, state and federal legislators, academia and courts throughout the country.

Jay has been appointed lead counsel in numerous state, federal, and international class actions, resulting in hundreds of millions of dollars for his clients. He is regularly asked to weigh in on federal and state legislation involving his cases. He testified to the U.S. Senate about the largest pet food recall in the country's history and is advising state and federal politicians on consumer issues relating to the recent federal bailouts, as well as technology issues, such as those involving mobile marketing. Jay also counsels companies on legal compliance and legislative issues in addition to handling all types of complex commercial litigation.

Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes including the Telephone Consumer Protection Act and the Video Privacy Protection Act. As lead counsel, he has also secured settlement in cases of first impression involving Facebook, Microsoft, AT&T and countless others, collectively worth hundreds of millions of dollars.

In addition to technology based litigation, Jay has been involved in a number of high-profile "mass tort" class actions and product recall cases, including cases against Menu Foods for selling

contaminated pet food, a $30 million class action settlement involving the Thomas the Tank toy train recall, and suits involving damages arising from second-hand smoke.

In 2009, Jay was named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin. In giving Jay that award, he was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution." Also in 2009, Jay was included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management.  In 2010, he was presented with the Annual Humanitarian Award in recognition of his "personal integrity, professional achievements, and charitable contributions" by the Hope Presbyterian Church.

Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting, including serving as panelist on national symposium on tort reform and, separately, serving as a panelist on litigating high-profile cases. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School and The John Marshall Law School, and has co-chaired a 2-day national symposium on class action issues.  He has been an adjunct professor, teaching a seminar on class action litigation at Chicago-Kent College of Law since 2010.

Jay is a graduate of Brandeis University and the University of Michigan Law School.

**MYLES MCGUIRE** is a Partner at EDELSON MCGUIRE.  His practice concentrates on consumer protection law, class actions, and legal and political consulting to technology companies. Prior to entering private practice, Myles spent several years operating an Internet advertising company, which was later sold, in addition to counseling high-tech companies on legal issues.

Since turning to plaintiffs' advocacy, Myles has had principle control over many nationwide and multi-state class actions.  Drawing on his technological background, his specific area of emphasis is on emerging technology class actions, including those involving electronic commerce, cellular telephony and wireless media, among others.  He has served in leadership positions in groundbreaking settlements involving Facebook, Verizon, Sprint, and T-Mobile.

Due to his diverse legal and business expertise, Myles has been asked by members of Congress to comment on proposed legislation in the mobile content industry and has worked with state regulatory bodies in related efforts.

Myles graduated from Marquette University Law School in 2000 and is admitted to practice in Wisconsin and Illinois. He is a member of the National Association of Consumer Advocates and the Chicago Bar Association.

**RYAN D. ANDREWS** is a Partner and Group Chair at EDELSON MCGUIRE.  He has been appointed class counsel in multiple complex high-stakes class actions, and actively involved in the litigation and settlement of class actions focused on the mobile content industry and Internet privacy.

Prior to joining the firm, Ryan engaged in all aspects of the prosecution and defense of claims on

behalf of individual and corporate clients, including motion practice, arbitration, mediation, trial to verdict, and appeals.

Ryan received his J.D. with High Honors from the Chicago-Kent College of Law in 2005 and was named *Order of the Coif*. While in law school, Ryan was a Notes & Comments Editor for THE CHICAGO-KENT LAW REVIEW, as well as a teaching assistant for both Property Law and Legal Writing courses. Ryan externed for the Honorable Joan B. Gottschall in the Northern District of Illinois, and earned CALI awards for the highest grade in five classes.

Ryan graduated from the University of Michigan in 2002, earning his B.A., *with distinction*, in Political Science and Communications.

**RAFEY S. BALABANIAN** is a Partner and Group Chair at EDELSON MCGUIRE. Rafey focuses his practice on prosecuting consumer technology class actions, banking class actions, and general consumer class actions. He is also co-chair of Edelson McGuire's business litigation group.

On the plaintiff's side, Rafey has been the court appointed lead counsel in numerous high-stakes class action litigation and has obtained settlements in excess of $50 million.

On the business litigation side, Rafey has represented individual and corporate clients in a wide variety of complex cases, including commercial disputes seeking damages of $60 million and several "bet the company" cases.

Rafey has first-chaired both jury and bench trials, engaged in extensive motion practice, and acted as lead counsel in several mediations and arbitrations.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, Rafey received a certificate in international and comparative law and earned the CALI award for the highest grade in advanced trial advocacy. Rafey received his B.A. in History, *with distinction*, from the University of Colorado – Boulder in 2002.

**MICHAEL J. MCMORROW** is a Partner at EDELSON MCGUIRE. His practice focuses on commercial litigation and class action law, and his recent experience includes representation of consumer classes in litigation under the federal Telephone Consumer Protection Act, the California Unfair Competition Law, several common law claims, and additionally, representation of corporate clients in the mobile telephone content industry in commercial and trade secret litigation.

Mike is an experienced trial and appellate commercial litigator who has represented clients in court and at trial across a full spectrum of issues, including trade secret litigation, commercial contracts, airplane leasing, airport construction, automotive manufacturing, commercial and consumer lending, product liability, and has represented clients in heavily-regulated industries including insurance, defense contracting, health care and energy. Prior to joining the firm, Mike was Senior Counsel at Foley & Lardner LLP, practicing commercial and energy regulatory litigation.

Mike graduated magna cum laude from the University of Illinois College of Law in 2000, where he was Associate Editor of the UNIVERSITY OF ILLINOIS LAW REVIEW, a Harno Scholarship

recipient, and President of the Prisoners' Rights Research Project. Mike received his B.A. in Political Science from Yale University in 1994. Mike has been a member of the Trial Bar for the Northern District of Illinois since 2005 and the Chicago Bar Association Judicial Evaluation Committee since 2003.  His pro bono representations have included asylum applicants and prisoners' rights issues.

**STEVEN W. TEPPLER** is a Partner of EDELSON MCGUIRE.  Steven concentrates his practice on data protection and information technology law, including electronic discovery, loss or destruction of information, authentication and admissibility issues uniquely inherent to computer generated information, including spoliation issues arising from unauthorized or illegal data manipulation or alteration. He is the Co-Vice-Chair of the American Bar Association Information Security Committee as well as the Florida Bar's Professional Ethics Committee.

Steven has authored over a dozen articles relating to information technology law and routinely presents his work at conferences.  Steven's recent publications include:  *Spoliation in the Digital Universe, The SciTech Lawyer,* Science and Technology Law Section of the American Bar Association, Fall 2007; *Life After Sarbanes-Oxley – The Merger of Information Security and Accountability* (co-author), 45 JURIMETRICS J. 379 (2005); *Digital Signatures Are Not Enough* (co-author), Information Systems Security Association, January 2006; *State of Connecticut v. Swinton:  A Discussion of the Basics of Digital Evidence Admissibility* (co-author), Georgia Bar Newsletter Technology Law Section, Spring 2005; *The Digital Signature Paradox* (co-author), IETF Information Workshop (The West Point Workshop) June 2005; *Observations on Electronic Service of Process in the South Carolina Court System,* e-filing Report, June 2005.  Steven is also a contributing author to an American Bar Association book with the working title "Foundations of Digital Evidence" (publication expected March 2009).

Steven graduated from the Benjamin N. Cordozo School of Law in 1980 after earning his B.A., *summa cum laude*, from the City College of New York in 1977.  Steven is admitted to the bars of New York, the District of Columbia and Florida.

**STEVEN LEZELL WOODROW** is a Partner and Group Chair at EDELSON MCGUIRE and the firm's hiring attorney. Steven has successfully litigated and settled a number of consumer protection cases through trial, engaged in extensive motion practice, drafted appellate briefs, prosecuted class actions and participated in multi-session mediations.

Prior to joining the firm, Steven was a litigator at a Chicago boutique focusing on consumer protection matters, real estate disputes, fraudulent transfers in bankruptcy and the prosecution of white-knight mortgage fraud cases.

Steven received his J.D. from Chicago-Kent College of Law with High Honors, *Order of Coif,* while earning his certificate in litigation and alternative dispute resolution. During law school, he served as a Judicial Extern for the Honorable Ann C. Williams on the Seventh Circuit Court of Appeals and as President of the Student Bar Association. Steven also served as a Notes and Comments Editor for THE CHICAGO-KENT LAW REVIEW and represented Chicago-Kent at the National Sports Law Moot Court Competition in New Orleans in 2004.  Steven was awarded the ABA-ALI Scholarship and Leadership Award for best representing the combination of leadership and scholarship in his graduating class and also received the Lowell H. Jacobson

Memorial Scholarship, which is awarded competitively to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Steven received his B.A. in Political Science, *with Distinction*, from the University of Michigan—Ann Arbor in 2002.

**SEAN P. REIS** is Of Counsel to EDELSON MCGUIRE . Sean is an experience trial attorney and business litigator. Sean has experience in a wide-range of litigation matters, including those involving trade secrets, real estate fraud, employment, and consumer issues. Sean has tried sixteen cases, including several multi-week jury trials.

Prior to joining Edelson McGuire, Sean was trained at an international law firm and later founded his own practice. In 1993, Sean graduated from University of California at San Diego with a degree in quantative economics. Following that Sean graduated from Rutgers University School of Law, Newark where he was the business editor of the Rutgers Law Review and where he received the graduation for appellate advocacy.

**EVAN M. MEYERS** is Senior Counsel at EDELSON MCGUIRE. Evan is an experienced trial and appellate litigator and has handled a broad range of complex litigation matters, including contract disputes, securities and consumer fraud, employment discrimination, insurance coverage, antitrust, shareholder and tax disputes, business torts and other matters. Evan has managed all aspects of the litigation process, including evaluation and strategic analysis, drafting pleadings in state and federal trial and appellate courts, taking and defending depositions, arguing motions, and representing clients in mediations and settlement conferences. He has also successfully tried cases in state court.

Prior to joining Edelson McGuire, Evan worked at Drinker Biddle & Reath LLP, where he was an associate in the firm's commercial litigation practice group and represented a wide range of clients in federal and state courts, including manufacturers, insurance and financial services companies, government agencies, close corporations, hospitals, colleges and universities and not-for-profit entities.

Evan received his J.D., cum laude, from the University of Illinois College of Law in 2002, where he was an associate editor of the Elder Law Journal. Additionally, he served as a judicial extern with the Hon. Wayne R. Andersen of the U.S. District Court for the Northern District of Illinois. Evan received his bachelor's degree, with distinction, in political science from the University of Michigan in 1999.

**WILLIAM C. GRAY** is a Group Chair at EDELSON MCGUIRE. Bill has handled a broad range of complex litigation matters including; criminal matters, consumer and international fraud cases, labor and employment issues, and class actions. He has drafted pleadings and briefs, argued motions, and represented clients in mediations, arbitrations, state and federal courts, before human rights agencies, and before state and federal Department of Labor. Additionally, Bill has significant appellate advocacy experience and has argued in front of the Seventh Circuit Court of Appeals.

Bill previously worked at Sidley Austin LLP, and represented a wide range of clients, including Fortune 100 companies, in various forums, including manufacturers, insurance and financial services companies, government agencies, corporations, universities and not-for-profit entities. Additionally, he has participated in several high-profile cases resulting in favorable resolutions for his clients.

Bill received his J.D., cum laude, from Harvard Law School, where he was an editor of the Black Letter Law Journal. He also served as a research assistant for Professor Alan Dershowitz. Bill additionally spent a semester working in Jerusalem for the Simon Wiesenthal Center and was a member of the Criminal Code Commentary Committee for the country of Kosovo. Bill graduated from Indiana University with high honors. While at Indiana University, Bill was elected President of the Student Body for the campus's 40,000 students and was inducted into Phi Beta Kappa. He also appeared as an invited guest on MSNBC, The Mitch Albom Show, and The O'Reilly Factor.

Bill has been an active member of the legal community and has served in many pro bono matters. He currently serves on the Illinois State Bar Association Standing Committee on the Attorney Registration and Disciplinary Committee (ARDC), is a Board Member of the Decalogue Society of Lawyers (co-chair of the Young Lawyer's Committee), and is actively involved in the Anti-Defamation League and the American Cancer Society. Additionally, Bill has collaborated for years with the Northwestern Center on Wrongful Convictions in securing the release of wrongfully-convicted inmates.

**BRAD BAGLIEN** is an Associate at EDELSON MCGUIRE. Brad focuses his practice on privacy and technology class actions.

Brad previously worked for Sidley Austin LLP, where he represented a wide range of clients, including Fortune 100 companies, small businesses, and individuals. He has handled a variety of complex commercial litigation matters in state and federal courts, including consumer fraud actions, contract disputes, internal investigations, insurance class actions, and commercial tax litigation.

Brad graduated with honors from the University of Chicago Law School, where he participated in the Hinton Moot Court Competition and was an instructor in the Street Law program at several local high schools. During law school, Brad served as a judicial extern for the Honorable Mark Filip in the Northern District of Illinois.

Brad graduated from St. Olaf College with degrees in Economics and Political Science. While at St. Olaf, he was a captain of the baseball team and a member of the football team.

**CHRISTOPHER L. DORE** is an Associate at EDELSON MCGUIRE. Chris focuses his practice on prosecuting consumer technology fraud, text-spam, and credit reduction class actions.

Chris graduated magna cum laude from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member for the D.M. Harish International Moot Court Competition in Mumbai, India. His article, What to Do With Omar Khadr? Putting a Child Soldier on Trial: Questions of International Law, Juvenile Justice, and Moral Culpability appeared in the John Marshall Law Review. Throughout law school, Chris

worked as a Legal Writing TA. He received a CALI Award for obtaining the highest grade in Voting and Election Law.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating magna cum laude from the International Institute for the Sociology of Law, located in Onati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**KIRT GALLATIN** is an associate at EDELSON MCGUIRE.

Kirt received his Juris Doctor from Northwestern University School of Law.   While at Northwestern, Kirt served as a research assistant for Professor Stephen B. Presser and was an active member of the Student Funded Public Interest Fellowship and Latin Law Student Association.

Kirt graduated from Florida Gulf Coast University, magna cum laude, obtaining Bachelor degrees in both Legal Studies and Criminal Justice.  While at FGCU, Kirt was elected Student Body President and served on the FGCU Board of Trustees and the Florida Student Association Board of Directors.  (Admission pending in November 2011).

**CHANDLER GIVENS** is an associate at EDELSON MCGUIRE, where his practice focuses on technology and privacy class actions.  His lawsuits have focused on fraudulent software development, unlawful tracking of consumers through mobile devices and computers, and illegal data retention.

Chandler graduated from the University of Pittsburgh School of Law.  While in law school, he was a research assistant for Cyberlaw Professor Dr. Kevin Ashley, a judicial extern for the Honorable David S. Cercone of the United States District Court for the Western District of Pennsylvania.  Chandler received CALI awards for the highest course grades in Negotiations as well as Telecommunications Law.  He graduated *cum laude* from Virginia Tech, with a B.S. in business information technology, with a focus on computer-based decision support systems. Chandler sits on the ABA committees for Information Security and e-Discovery.

Before joining the legal profession, Chandler was a systems analyst.  He has given talks on networks security, including, beginning at the age of 14, lecturing to groups comprised of engineers from organizations such as NASA.  Chandler currently leads a team of technology investigative researchers at the firm.

Before starting with the firm, Chandler interned at the Virginia Attorney General's Office and the U.S. Department of Justice in Washington D.C. (Admission pending in November 2011).

**JOHN OCHOA** is an associate at EDELSON MCGUIRE. John's practice focuses on consumer class action litigation.

John graduated *magna cum laude* from the John Marshall Law School in May, 2010 and served as Managing Editor for the John Marshall Law Review.  His student Comment, which examines

bicycling and government tort immunity in Illinois, appears in Vol. 43, No. 1 of the JOHN MARSHALL LAW REVIEW.   While in law school, John took advantage of various scholastic opportunities, serving as a research assistant, externing with Judge Thomas Hoffman at the Illinois Court of Appeals, and competing in the ABA National Appellate Advocacy Competition. John was awarded a Herzog scholarship for his academic performance and earned CALI awards for the highest grade in Torts, Property, and Administrative Law.

He received his B.A. with Honors in Political Science from the University of Iowa in 2004.

**BENJAMIN H. RICHMAN** is an Associate at EDELSON MCGUIRE. Ben focuses his practice in the prosecution of consumer technology and other class actions, as well as general commercial litigation.

Ben received his J.D. from The John Marshall Law School, earning a Certificate in Trial Advocacy. During law school Ben served as Executive Student Publications Editor for The John Marshall Law Review and as a judicial extern for the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois. Ben also acted as a teaching assistant in several torts courses and earned the CALI award for the highest course grade in Contracts II. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions and complex litigation.

Ben graduated from Colorado State University, earning his B.S. in Psychology.

**ARI J. SCHARG** is an associate at Edelson McGuire LLC.  He handles all aspects of litigation from pre-filing investigation through trial.  In addition to class action litigation, Ari has substantial experience litigating commercial, real estate, employment, and constitutional matters. He also counsels entrepreneurs and works closely with startup companies to manage risk and raise capital.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website.  He also regularly tries his cases before judges and juries, including a trial that spanned six months.

Ari is very active in community groups and legal industry associations.  He is a member of the Board of Directors of the Chicago Legal Clinic, an organization that provides legal services to low-income families in the Chicago area.  Ari acts as Outreach Chair of the Young Adult Division of American Committee for the Shaare Zedek Medical Center in Jerusalem, and is actively involved with the Anti-Defamation League.  He is also a member of the Standard Club Associates Committee.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for Law Review and competed nationally in trial competitions.  During law school, he also served as a judicial extern to The Honorable Judge Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**IRINA SLAVINA** is an Associate at EDELSON MCGUIRE. As a Russian attorney, Irina obtained her LL.M degree in International and Comparative Law, with High Honors, from Chicago-Kent College of Law in 2003. Since that time Irina has had a unique legal career in the United States that started in a boutique law office in Chicago and progressed to the legal department of a major gaming and entertainment company on the east coast.

While working in-house with General Counsel, Irina gained extensive experience in drafting and negotiating company contracts and addressing the day-to-day legal inquiries of management. Irina handled patrons' liability claims, worked with state and local government officials in obtaining and renewing company licenses, and assisted with all aspects of corporate governance and compliance.

Irina earned her J.D. from Chicago-Kent College of Law with High Honors, Order of Coif, in 2009. While in law school, Irina represented Chicago-Kent in the McGee National Civil Rights Moot Court Competition. Irina was also a member of the Chicago-Kent Law Review, and her student note on the issue of a casino liability to problem gambles was published in the March 2010 issue, 85 Chi.-Kent L. Rev. 369. Irina externed for the Honorable Susan E. Cox in the Northern District of Illinois, and earned the CALI award for obtaining the highest grade in Constitutional Law, Evidence, and Legal Writing III courses.

**BEN THOMASSEN** is an associate at Edelson McGuire, LLC and is a member of the Banking and Financial Services Practice Group.

Ben received his J.D., magna cum laude, from Chicago-Kent College of Law, where he also earned his certificate in Litigation and Alternative Dispute Resolution and was named Order of the Coif. At Chicago-Kent, Ben was Vice President of the Moot Court Honor Society and competed in both the ABA National Appellate Advocacy and National Moot Court Competitions. Among other scholarships and awards, Ben earned seven CALI awards for the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts.

Before his legal career, Ben worked in and around the Chicago and Washington, D.C. areas, including freelance and firm-based work as a website designer/developer, and many years experience as a film projectionist and media technician for commercial theatres, museums, and educational institutions. Ben received his Bachelor of Arts, summa cum laude, from St. Mary's College of Maryland and his Master of Arts from the University of Chicago. (Admission pending in November 2011).