IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LAWRENCE WALEWSKI, individually and
on behalf all others similarly situated,

       Plaintiff,

v.                               Case No. 6:11-cv-01178-JA-DAB

ZENIMAX MEDIA INC., a Delaware
Corporation, and BETHESDA SOFTWORKS LLC,
a Delaware Limited Liability Company,

       Defendants.

_____/

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES

Defendants ZeniMax Media Inc. ("ZeniMax") and Bethesda Softworks LLC

(""Bethesda" and collectively with ZeniMax, "Defendants") for their answer to Plaintiff

Lawrence Walewski's ("Plaintiff") Class Action Complaint ("Complaint"),[1] state as follows:

## PARTIES

1.     Plaintiff Lawrence Walewski is a natural person and a citizen of the State of
Florida.

**ANSWER**:    Defendants lack sufficient knowledge or information to form a belief as to

the truth of the allegations contained in Paragraph 1 of the Complaint and therefore deny them.

2.     Defendant ZeniMax Media, Inc. is a corporation incorporated and existing under
the laws of the State of Delaware with its principal place of business located in
Rockville, Maryland.

**ANSWER**:    Defendants admit the allegations of Paragraph 2 of the Complaint.

_____

[1] On November 28, 2011, the Court denied without prejudice Defendants' Fed.R.Civ.P. 12(b)(6)
Motion to Dismiss insofar as it raises the issue of what state's law will govern the claims in this
case.  [Dkt. #43.]  Defendants reserve their right to raise the issue of choice of law at a later stage
of this litigation.

3.      Defendant Bethesda Softworks LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in Rockville, Maryland. Defendant transacts business in Florida and throughout the country. Bethesda is a wholly owned subsidary of Defendant ZeniMax.

**ANSWER**:      Defendants admit that Bethesda is a limited liability company organized

and existing under the laws of the State of Delaware with a principal place of business located in

Rockville, Maryland, and that Bethesda is a wholly owned subsidiary of ZeniMax. Defendants

deny the remaining allegations of Paragraph 3 of the Complaint.

## JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from any Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to the instant action.

**ANSWER**:      Defendants lack sufficient knowledge or information to form a belief as to

the truth of the allegations contained in Paragraph 4 of the Complaint and therefore deny them.

5.      Venue is proper in this district under 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to the claims asserted herein occurred in this district.

**ANSWER**:      Defendants lack sufficient knowledge or information to form a belief as to

the truth of the allegations contained in Paragraph 5 of the Complaint and therefore deny them.

## CONDUCT COMPLAINED OF

6.      Bethesda is an American video game developer and publisher. Bethesda has developed a broad range of game, including The [sic] *Elder Scrolls* franchise, a single-player role playing video game series.

**ANSWER**:      Defendants admit that Bethesda develops and publishes video games,

including *The Elder Scrolls IV: Oblivion*®, the fourth game of Defendants' *The Elder Scrolls*®

series. Defendants deny the remaining allegations of Paragraph 6 of the Complaint.

7.      Games within the [sic] *Elder Scrolls* series are available on multiple gaming platforms, including the Xbox 360 and PlayStation 3 consoles, as well as

Windows-based personal computers.  In an *Elder Scrolls* game, a player typically controls and develops a single in-game character (often referred to as an "avatar") through a series of "quests" in a fantasy gaming world.

**ANSWER**:   Defendants admit that *The Elder Scrolls IV: Oblivion*® is available for use on the Microsoft Xbox 360, PlayStation 3, and PC computer platforms.  Defendants deny the remaining allegations of Paragraph 7 of the Complaint.

8.   *The Elder Scrolls IV: Oblivion* is the fourth full installment of the [sic] *Elder Scrolls* series.  Defendants originally released *Oblivion* on March 20, 2006 for Windows PCs and the Xbox 360 gaming console.  Defendants released the game for the PlayStation 3 console on March 20, 2007.

**ANSWER**:   Defendants admit that *The Elder Scrolls IV: Oblivion*® is the fourth game of Defendants' *The Elder Scrolls*® series and admit that *The Elder Scrolls IV: Oblivion*® initially was released for use on the Microsoft Xbox 360 and PC computer platforms in 2006 and initially was released for use on the PlayStation 3 platform in 2007.  Defendants deny the remaining allegations of Paragraph 8 of the Complaint.

9.   In Autumn, 2007, Defendants released *The Elder Scrolls IV: Oblivion Game of the Year Edition* for all three platforms.  The *Game of the Year Edition* featured the original *Oblivion* video game, as well as two previously-released "expansion packs" that allegedly offered numerous hours of additional gameplay.

**ANSWER**:   Defendants admit that *The Elder Scrolls IV: Oblivion*® *Game of the Year Edition* was released in 2007 for use on the Microsoft Xbox 360, PlayStation 3, and PC computer platforms and that *The Elder Scrolls IV: Oblivion*® *Game of the Year Edition* contains the original *The Elder Scrolls IV: Oblivion*® game, *The Elder Scrolls IV: Knights of the Nine*™ expansion, and *The Elder Scrolls IV: Shivering Isles*™ expansion.  Defendants deny the remaining allegations of Paragraph 9 of the Complaint.

10.   The *Oblivion* video game purports to offer open-ended or "sandbox" gameplay, allowing players to freely roam the gaming world and perform various tasks, develop individual characters, or simply explore.  While *Oblivion* features a linear main quest, Defendants encourage players to postpone or ignore the quest for as long as the player wishes to explore the entirety of the gaming world.

3

**ANSWER**:     Defendants deny the allegations contained in Paragraph 10 of the Complaint.

11.     At all relevant times, Defendants engaged in an extensive advertising and marketing campaign in support of the *Oblivion* video game.  One of the primary features emphasized by Defendants in its [sic] advertisements was the longevity of the *Oblivion* video game and the sheer size of the virtual gaming world. Bethesda prominently advertised that the game offered an expansive, "free-form" world, with "open-ended" gameplay that allowed the player to explore with little limitation.

**ANSWER**:     Defendants admit that they have advertised and promoted *The Elder Scrolls IV: Oblivion*®.  Defendants deny that their advertisements or promotions for *The Elder Scrolls IV: Oblivion*® violated any law and deny the remaining allegations of Paragraph 11 of the Complaint.

12.     For example, in an online description of features of the game, Defendants claimed that *Oblivion* offered:

Open-ended game play and short challenges: The enormous world of *Oblivion* is open, allowing players to explore at their own pace. Players will encounter shorter challenges such as fighting bandits, mixing potions, and creating magic along the way to unraveling the main quest.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 12 of the Complaint.

13.     Similarly, the instruction manual for the *Oblivion Game of the Year Edition* for the Xbox 360 states:

With The Elder Scrolls, our goal has always been to create a game that offers unlimited possibilities.  A game where you could be whoever you wanted and do whatever you wanted.  "Live another life, in another world" has been our motto, and we want you to do just that.

So if you like wandering and exploring, that's what you should do.  If you simply want to complete the main quest and feel like you "finished" the game, then you can do just that.  Most folks will find themselves somewhere in between, and fortunately there's a lot of wandering and exploring involved in finishing the main quest.

4

**ANSWER**:     Defendants admit that the "Introduction to Oblivion" section of the

instruction manual for *The Elder Scrolls IV: Oblivion® Game of the Year Edition* includes, in

part, the language set forth in Paragraph 13 of the Complaint.  Defendants deny that Paragraph

13 completely or accurately sets for the entirety of the "Introduction to Oblivion" section of the

instruction manual for *The Elder Scrolls IV: Oblivion® Game of the Year Edition* and deny that

the "Introduction to Oblivion" section of the instruction manual for *The Elder Scrolls IV:*

*Oblivion® Game of the Year Edition* violates any law.  Defendants deny the remaining

allegations contained in Paragraph 13 of the Complaint.

> 14.     The terms "free-form," "open-ended," "open-world," and "sandbox" gameplay
> have a distinct and tangible meaning in the video gaming community, including to
> Plaintiff and members of the Class.  Gamers generally understand that such terms
> describe a game environment that allows players to play creatively, free of
> artificial structural constraints, and with there being "no right way" to play the
> game.  Because only a small number of games offer this type of gameplay, many
> gamers are particularly attracted to true open-world, "sandbox" games, and game
> developers such as Bethesda use these descriptors to induce gamers to purchase
> their video games.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 14 of the

Complaint.

> 15.     In addition, character development is a primary element of the *Oblivion* video
> game.  At the beginning of the game, the player selects a character from one of
> many different "races" and customizes their character's appearance.  The player
> then creates one or more "save files" that allow the user to save his or her
> character's progress throughout the game on their console's hard drive.

**ANSWER**:     Defendants admit that players of *The Elder Scrolls IV: Oblivion®* generate

a character and that the selection of the character's "race" and appearance is a part of the

character generation process.  Defendants further admit that a player's game play data may be

saved in one or more save files that may be stored on the player's Microsoft Xbox 360,

PlayStation 3, or PC computer platform.  Defendants deny the remaining allegations contained in

Paragraph 15 of the Complaint.

16. One of the player's perpetual objectives in the game is to improve their character's skills, which are numerical representations of the character's ability in certain areas. The game rewards players with "perks" when their character reaches certain numerical levels in each skill.

**ANSWER**:   Defendants deny the allegations contained in Paragraph 16 of the Complaint.

17. Because a player can best develop his or her character by performing tasks and missions outside of *Oblivion's* main quest, the focus on character development encourages players to spend substantial amounts of time exploring the gaming world to improve their character's skill levels.

**ANSWER**:   Defendants deny the allegations contained in Paragraph 17 of the Complaint.

18. Defendants encourage consumers to spend substantial amounts of time developing individual characters. Indeed, on its official blog, Bethesda sponsored an "Oblivion Iron Man" contest that offered a prize to the player with the longest single-character gameplay time, which Defendant [sic] presumed would exceed 1000 hours.

**ANSWER**:   Defendants admit that a contest referred to as "The Oblivion Iron Man Contest" was held in August 2007. Defendants deny the remaining allegations contained in Paragraph 18 of the Complaint.

19. As a result of Defendants' advertisements and marketing efforts, consumers purchased the *Oblivion* video game with the expectation that it would offer expansive, open-ended gameplay with "unlimited possibilities" for exploration and character development.

**ANSWER**:   Defendants deny the allegations contained in Paragraph 19 of the Complaint.

20. Contrary to the representations and advertisements of Defendants, the length, scope, and functionality of the *Oblivion* video game is severely limited by an inherent design defect that, to the player, unexpectedly occurs during gameplay and effectively shuts down a player's existing game once manifested. Despite its knowledge of the problem, Defendants have taken no actions to correct the defect for existing players, and continue to sell the *Oblivion* video game without notifying future purchasers of the defects inherent in the game.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 20 of the

Complaint.

21.     Soon after its initial release, consumers began to experience and contact
Defendants about major technical issues affecting the performance of the *Oblivion*
video game.  These "glitches" ranged in severity, from general slowing of
gameplay, to screen "freezes" that forced players to reset their consoles or
computers, to more serious problems that permanently shut down the game and
prevented players from progressing further.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 21 of the

Complaint.

22.     Most seriously, the game suffers from a universal animation defect (the
"Animation Defect") – commonly referred to in the gaming community as the
"abomb" or "a-bomb" – that, once manifested, effectively ends the player's game
and forces him or her to restart *Oblivion* from scratch with an entirely
new character.  The Animation Defect occurs suddenly, without warning, sometimes
after as little as 200 hours of gameplay.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 22 of the

Complaint.

23.     The Animation Defect causes all "secondary" animations to freeze, including
spell effects, doorways, gateways, bridges, and traps, among other things.  While
the lack of animation in these elements may seem purely aesthetic, the actual
result is crippling to a player's quest, essential gameplay, and overall use of the
game.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 23 of the

Complaint.

24.     As a result of the Animation Defect, players are unable to open doors or gates,
drop bridges, move elevators, or perform basic character animations that are
essential to progressing in the game.  Because nearly every "quest" – including
*Oblivion's* main quest – requires that the player open doorways, gates, and
effectively cast spells, the player cannot progress in the game following the onset
of the Animation Defect.  Accordingly, the player's only option is to restart the
game with an entirely new character.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 24 of the

Complaint.

25.    The Animation Defect is particularly damaging to *Oblivion* game players because it often manifests after players have invested significant amounts of time and effort building their personal characters, a primary goal of the *Oblivion* video game.

**ANSWER**:    Defendants deny the allegations contained in Paragraph 25 of the Complaint.

26.    Every version of the *Oblivion* video game suffers from the Animation Defect.  For the vast majority of consumers, including all users of the *Oblivion* video game for the Xbox 360 and PlayStation 3 consoles, there is no remedy for the defect for any version of the *Oblivion* video game.

**ANSWER**:    Defendants deny the allegations contained in Paragraph 26 of the Complaint.

27.    Several *Oblivion* game players have identified the suspected cause of the Animation Defect on Bethesda's official forums.  Based on these consumer investigations, it is commonly understood that each *Oblivion* "save file" contains a four byte number sequence that continuously increases during gameplay.  When the number reaches a certain value, the Animation Defect is suddenly triggered, and values beyond the trigger value increase the severity of the defect.

**ANSWER**:    Defendants deny the allegations contained in Paragraph 27 of the Complaint.

28.    Said differently, as a user continues to play the *Oblivion* video game, each animation that occurs in the game adds to an internal "counter."  When the counter reaches its maximum level – an inevitable occurrence with continued gameplay – the Animation Defect suddenly occurs and the user's game is effectively ended.

**ANSWER**:    Defendants deny the allegations contained in Paragraph 28 of the Complaint.

29.    Players are thus forced to play *Oblivion* "under the gun" – they must rush to finish the game's main quest before the Animation Defect occurs, a far cry from the open-ended gameplay, "enormous world," and "unlimited possibilities" promised by Defendants.

**ANSWER**:    Defendants deny the allegations contained in Paragraph 29 of the Complaint.

30.     Defendants have offered no way to fix the Animation Defect on any version of the *Oblivion* video game without forfeiting all progress in the game.  Once the Animation Defect has occurred, the *Oblivion* game will not function properly, an the player is forced to begin a new game from scratch.  Even then, the Animation Defect will inevitably reoccur after the player creates and develops a new character and quest.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 30 of the

Complaint.

31.     Defendants have long been aware of the Animation Defect and its crippling effect on gameplay.  Despite knowledge of the defect, Defendants have refused to provide a patch, replacement product, or any other remedy.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 31 of the

Complaint.

32.     For example, in or about March, 2007, a Bethesda employee posted the following comment on Bethesda's official forums in response to consumer complaints about the Animation Defect:

So here's the deal
Our team is well aware of this issue, but it is one we have not been able to resolve because of the nature of the problem and any fixes related to it.  We are continuing to look into it and will let folks know if/when we are able to address it in the future.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 32 of the

Complaint.

33.     Soon thereafter, a member of Bethesda's technical support staff provided the following response to a consumer's question about the Animation Defect, which was then posted on Bethesda's official forum:

Hello,

This issue will not be fixed.
There is no official patch or fix to correct this issue from within the game. We are aware of the issue, but it is one we have not been able to resolve because of the nature of the problem and any fixes related to it.  We are continuing to look into it and will let folks know if/when we are able to address it in the future.
…

Best regards,
James H. at Bethesda Softworks Technical Support
Support04@bethsoft.com

**ANSWER**:     Defendants deny the allegations contained in Paragraph 33 of the

Complaint.

34.     While Defendants admitted their knowledge of the animation Defect on
Bethesda's forums in response to complaints from current *Oblivion* players,
Defendants intentionally did not further publicize or otherwise disclose the
existence of the defect to a wider audience.  Accordingly, consumers were not
made aware of the Animation Defect prior to purchasing the *Oblivion* video
game.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 34 of the

Complaint.

35.     Defendants have not remedied the Animation Defect for any purchaser of the
*Oblivion* video game.  Nor have Defendants undertaken any actions to notify past
or future purchasers of the inherent defects in the *Oblivion* game.  Rather,
consumers are led to believe that they [sic] *Oblivion* will experience expansive,
unlimited gameplay, only to unexpectedly experience the Animation Defect after
developing a unique character and quest.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 35 of the

Complaint.

36.     Defendants have continued to release new versions of *Oblivion* with full
knowledge of – and without fixing – the Animation Defect, including *Oblivion:
Game of the Year Edition* and the recently released *Oblivion: 5th Anniversary
Edition*, which Defendants released on July 12, 2011.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 36 of the

Complaint.

37.     Defendants continue to market the longevity and "free-form" nature of the
*Oblivion* video game despite their knowledge of the Animation Defect, an
inherent defect that Defendants know will shut down the game after only
moderate levels of gameplay.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 37 of the

Complaint.

38.   The existence of the Animation Defect significantly decreases the value of the *Oblivion* video game to consumers.  As described above, games that provide true open-ended, expansive gameplay are highly valued by gamers and are worth more to consumers than games limited by inherent gameplay defects.

**ANSWER**:   Defendants deny the allegations contained in Paragraph 38 of the

Complaint.

39.   Based on Defendants' advertisements and representations, consumers purchased the *Oblivion* video game with the expectation that it would offer open-ended, free form, expansive gameplay that could be experienced at the player's own pace. However, the Animation Defect severely limits *Oblivion's* gameplay after moderate use, resulting in consumers receiving a less valuable product than they initially paid for and expected.  Had consumers known of the inherent defects in the *Oblivion* video game prior to purchase, they would not have purchased *Oblivion* or would have paid less money to purchase the game.

**ANSWER**:   Defendants deny the allegations contained in Paragraph 39 of the

Complaint.

40.   Consumers are further harmed because the Animation Defect diminishes the resale value of the *Oblivion* video game on the secondary market.  Traditionally, the secondary market for video game sales is strong, allowing consumers to sell used video games to traditional retailers and directly to other consumers through online transactions.  However, the existence of the Animation Defect makes it more difficult to resell the *Oblivion* video game, and potentially exposes the seller to liability to other consumers if the seller does not disclose the Animation Defect prior to resale.  Sellers are thus left with the unenviable choice of similarly deceiving buyers and promoting the *Oblivion* video game like Defendants, or disclosing the Animation Defect and suffering from the resulting decrease in value on the secondary market.

**ANSWER**:   Defendants deny the allegations contained in Paragraph 40 of the

Complaint.

## FACTS RELATING TO PLAINTIFF WALEWSKI

41.   Plaintiff Lawrence Walewski purchased *Oblivion: Game of the Year Edition* for the Xbox 360 video game console in or around March, 2011.

**ANSWER**:   Defendants lack sufficient knowledge or information to form a belief as to

the truth of the allegations contained in Paragraph 41 of the Complaint and therefore deny them.

42.    Prior to purchasing the *Oblivion* video game, Plaintiff viewed Defendants'
       advertisements and representations regarding the scope and longevity of the
       gameplay purportedly featured in the *Oblivion* video game.  The gameplay of
       *Oblivion* was the primary reason that Plaintiff purchased the game.

**ANSWER**:    Defendants lack sufficient knowledge or information to form a belief as to

the truth of the allegations contained in Paragraph 42 of the Complaint and therefore deny them.

43.    Prior to purchasing *Oblivion*, Plaintiff was not aware that every copy of the
       *Oblivion* video game, including *Oblivion: Game of the Year Edition*, suffered
       from the Animation Defect, and Plaintiff had no reason to know that each copy of
       the *Oblivion* video game suffered from the Animation Defect as a result of
       Defendants' misrepresentations and omissions.

**ANSWER**:    Defendants lack sufficient knowledge or information to form a belief as to

the truth of the allegations contained in Paragraph 43 of the Complaint and therefore deny them.

44.    Had Plaintiff known about the Animation Defect and its effect on *Oblivion's*
       gameplay, he would not have purchased the *Oblivion* video game, would have
       paid less money for the game, or would have attempted to return or exchange the
       game within the appropriate time period.

**ANSWER**:    Defendants lack sufficient knowledge or information to form a belief as to

the truth of the allegations contained in Paragraph 44 of the Complaint and therefore deny them.

45.    Plaintiff began playing his copy of *Oblivion: Game of the Year Edition* in or
       around March, 2011.  As encouraged by Defendants, Plaintiff created an began to
       develop a unique character within the game.

**ANSWER**:    Defendants lack sufficient knowledge or information to form a belief as to

the truth of the allegations contained in Paragraph 45 of the Complaint and therefore deny them.

46.    Plaintiff experienced numerous technical problems while playing the *Oblivion*
       video game.  Among other things, Plaintiff's game continuously "froze" after
       short periods of gameplay, forcing Plaintiff to restart his Xbox 360 console and
       forfeit his progress in the game.

**ANSWER**:    Defendants lack sufficient knowledge or information to form a belief as to

the truth of the allegations contained in Paragraph 46 of the Complaint and therefore deny them.

47.    After approximately 450 hours of gameplay, the Animation Defect suddenly
       manifested in Plaintiff's copy of the *Oblivion* video game.  Plaintiff was unable to

open doors and gates, cast spells, or trigger numerous other animations that were essential to the completion of *Oblivion's* main quest and numerous side quests.

**ANSWER**:      Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 47 of the Complaint and therefore deny them.

48.      Plaintiff restarted his Xbox 360 console and attempted to reload his saved game. Plaintiff discovered that the Animation Defect was still present and continued to prevent further progress in the game.

**ANSWER**:      Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 48 of the Complaint and therefore deny them.

49.      As a result of the Animation Defect, Plaintiff was forced to abandon his saved game and forfeit his original character and progress in the game.  Plaintiff was unable to recover any data relating to his initial *Oblivion* save file.

**ANSWER**:      Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 49 of the Complaint and therefore deny them.

50.      Because Plaintiff is now aware of the existence of the Animation Defect and the fact that it will suddenly occur and ruin any subsequent character and saved game file that Plaintiff creates, Plaintiff no longer plays the *Oblivion* video game solely because of the Animation Defect.

**ANSWER**:      Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 50 of the Complaint and therefore deny them.

## CLASS ALLEGATIONS

51.      Plaintiff Lawrence Walewski brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All persons or entities residing in the United States who purchased any version of the *Elder Scrolls IV: Oblivion* video game.

Excluded from the Class are 1) Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current and former employees, officers, and directors; 2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family; 3) persons who execute and file

13

a timely request for exclusion, and 4) the legal representatives, successors, or assigns of any such excluded person.

**ANSWER**:   Defendants admit that Plaintiff purports to seek relief for himself and the members of a putative class.  Defendants deny that they have violated any law, deny that Plaintiff or any member of the putative class is entitled to any relief, deny that this action should be certified as a class action, and deny the remaining allegations contained in Paragraph 51 of the Complaint.

52.   Upon information and belief, the Class consists of millions of members such that joinder of all members is impracticable.

**ANSWER**:   Defendants deny the allegations contained in Paragraph 52 of the Complaint.

53.   Plaintiff's claims are typical of the claims of all of the other members of the class [sic].  Plaintiff and each Class member were affected in substantially the same way by Defendants' fraudulent, misleading, and unlawful marketing and shipment of a defective product.

**ANSWER**:   Defendants deny the allegations contained in Paragraph 53 of the Complaint.

54.   Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class.

**ANSWER**:   Defendants deny the allegations contained in Paragraph 54 of the Complaint.

55.   The factual and legal bases of Defendants' liability to Plaintiffs [sic] and to the other members of the Class are the same, resulting in injury to Plaintiffs [sic] and all of the other members of the Class.  Plaintiffs [sic] and the other members of the Class have all suffered harm and damages as a result of Defendants' wrongful conduct.

**ANSWER**:   Defendants deny the allegations contained in Paragraph 55 of the Complaint.

56. Common questions of law and fact exist as to all members of the Class and such questions predominate over any questions affecting Plaintiff or individual members.  Common questions for the Class include but are not limited to:

(a) whether the *Oblivion* video game fails to conform to Defendants' advertised product specifications;

(b) whether Defendants made false or misleading statements about the scope or capabilities of the *Oblivion* video game;

(c) whether Defendants knowing concealed the defective design of the *Oblivion* video game;

(d) whether Defendants refused to remedy or patch the Animation Defect;

(e) whether the Animation Defect led to a diminution in the value of the *Oblivion* video game;

(f) whether Defendants made representations that the *Oblivion* video game was of a particular standard or quality, which it was not;

(g) whether Defendants made representations that the *Oblivion* video game had characteristics, uses, benefits, or qualities which it did not have;

(h) whether Defendants' conduct as described herein violated the Maryland Deceptive Practices Act, Md. Code Ann., Comm. Law §13-101, *et seq.*;

(i) whether Defendants' conduct described herein constituted false advertising under Md. Code Ann., Comm. Law § 11-701; and

(j) whether Defendants' conduct described herein resulted in unjust enrichment to Defendant [sic].

**ANSWER**:    Defendants deny the allegations contained in Paragraph 56 of the

Complaint, and in subparagraphs (a) – (j), inclusive.

57. Plaintiff will fairly and adequately protect the interests of the other members of the Class, his claims are typical of the members of the Class, and he has retained counsel competent and experienced in similar class action litigation.  Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

**ANSWER**:    Defendants deny the allegations contained in Paragraph 57 of the

Complaint.

15

58.     Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitive and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and litigants, and promotes consistency and efficiency of adjudication.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 58 of the Complaint.

## **COUNT I**
### **Violation of the Maryland Deceptive Practices Act**
### **Md. Code Ann., Comm. Law § 13-101 *et seq.***
### **(On behalf of Plaintiff and the Class)**

59.     Plaintiff incorporates by reference the foregoing allegations as if set fully set forth herein.

**ANSWER**:     Defendants incorporate by reference their answer to each and every allegation set forth in Paragraphs 1 through 58 of this Answer as if set forth fully herein.

60.     Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Comm. Law § 13-101 *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices, *inter alia*, in connection with the sale of consumer goods or services.

**ANSWER**:     Paragraph 60 of the Complaint sets forth conclusions of law to which no answer is required. To the extent an answer is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 60 of the Complaint and therefore deny them.

61.     As "persons" under CPA § 13-101(h), Defendants are prohibited from engaging in unfair and deceptive trade practices.

**ANSWER**:     Paragraph 61 of the Complaint sets forth conclusions of law to which no answer is required. To the extent an answer is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 61 of the Complaint and therefore deny them.

62.     The CPA specifically prohibits Defendants from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency, or effect of deceiving and misleading consumers.  CPA § 13-301(1).

**ANSWER**:     Paragraph 62 of the Complaint sets forth conclusions of law to which no answer is required.  To the extent an answer is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 62 of the Complaint and therefore deny them.

63.     The CPA further prohibits Defendants from failing to state a material fact if the failure deceives or tends to deceive.  CPA 13-301(3).

**ANSWER**:     Paragraph 63 of the Complaint sets forth conclusions of law to which no answer is required.  To the extent an answer is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 63 of the Complaint and therefore deny them.

64.     By representing that the *Oblivion* video game offered open-ended gameplay, unlimited opportunities, and gameplay that can be experienced at the player's own pace, and by failing to disclose the existence of the Animation Defect and its effect on gameplay, Defendants have violated the CPA in at least the following respects:

    a.   In violation of section 13-301(1), Defendants have made false and misleading statements which have the capacity, tendency or effect of deceiving or misleading consumers;

    b.   In violation of section 13-301(2)(i), Defendants have represented that the *Oblivion* video game has an accessory, characteristic, ingredient, use, benefit, or quality which it does not have;

    c.   In violation of section 13-301(2)(iv), Defendants have represented that the *Oblivion* video game is of a particular standard, quality, grade, style or model which it is not;

    d.   In violation of section 13-301(3), Defendants have failed to state a material fact that deceived or tends to deceive consumers; and

e.   In violation of section 13-301(9), Defendants have knowingly concealed, suppressed, or omitted a material fact with the intent that a consumer rely on the same in connection with the sale of consumer goods.

**ANSWER**:   Defendants deny the allegations and conclusions of law contained in

Paragraph 64 of the Complaint, and in subparagraphs (a) – (e), inclusive.

65.   Defendants concealed material facts regarding the *Oblivion* video game from Plaintiff and members of the Class, including the fact that the Animation Defect prevented players from experiencing the expansive, open-ended, unlimited gameplay in accordance with Defendants' advertised performance specifications. This type of information is relied upon by consumers in making purchase decisions, and is material to the decision to purchase a costly video game.  Had Defendants disclosed such information, it would have been made known to Plaintiff and members of the Class through the marketing and advertising presented to Plaintiff and members of the class [sic] by Defendants, and Plaintiff and the members of the Class would not have purchased the *Oblivion* video game, would have paid less money for the game, or would have attempted to return or exchange the game within the appropriate time period.

**ANSWER**:   Defendants deny the allegations contained in Paragraph 65 of the

Complaint.

66.   As a direct and proximate result of Defendants' misrepresentations and omissions, Plaintiff and members of the Class suffered damages in the form of monies paid to purchase the *Oblivion* video game, and/or the difference in value between an *Oblivion* video game with and without the Animation Defect.

**ANSWER**:   Defendants deny the allegations contained in Paragraph 66 of the

Complaint.

67.   Plaintiff, on behalf of himself and each member of the Class, seeks damages, injunctive relief, and any other relief allowed by the CPA.

**ANSWER**:   Paragraph 67 of the Complaint sets forth conclusions of law to which no

answer is required.  To the extent an answer is required, Defendants deny that Plaintiff is entitled

to relief and deny the allegations contained in Paragraph 67 of the Complaint.

## COUNT II
### False Advertising in Violation of the Maryland Consumer Protection Act
### Md. Code Ann., Comm. Law § 11-701
### (On behalf of Plaintiff and the Class)

68.     Plaintiff incorporates by reference the foregoing allegations as if set forth fully herein.

**ANSWER**:     Defendants incorporate by reference their answer to each and every

allegation set forth in Paragraphs 1 through 67 of this Answer as if set forth fully herein.

69.     Md. Code Ann., Comm. Law § 11-701 provides that "Advertise Falsely" "means to use any advertisement, including a label, which is misleading in a material respect." Section 11-703 provides that "[a] person may not advertise falsely in the conduct of any business, trade, or commerce or in the provision of any service."

**ANSWER**:     Paragraph 69 of the Complaint sets forth conclusions of law to which no

answer is required. To the extent an answer is required, Defendants lack sufficient knowledge or

information to form a belief as to the truth of the allegations contained in Paragraph 69 of the

Complaint and therefore deny them.

70.     Defendants engaged in advertising and marketing to the public, and offered for sale the *Oblivion* video game on a nationwide basis. Defendants publically represented and advertised that the *Oblivion* video game featured an expansive and "free form" world, offered "open-ended gameplay," provided "unlimited opportunities," and allowed players to "explore at their own pace." Defendants made these representations with the intent to induce Plaintiff and Class members to purchase the *Oblivion* video game.

**ANSWER**:     Defendants admit that they have advertised and promoted *The Elder*

*Scrolls IV: Oblivion*®. Defendants deny that their advertisements or promotions for *The Elder*

*Scrolls IV: Oblivion*® violated any law and deny the remaining allegations of Paragraph 70 of

the Complaint.

71.     Defendants' advertising and marketing statements were and are untrue or misleading and likely to deceive the public in that the public statements portrayed a technical capacity and characteristic that Defendants knew or should have known the *Oblivion* video game was unable to deliver, as was apparent when

19

Defendants admitted that they could not or would not address the Animation Defect.

**ANSWER**:   Defendants deny the allegations contained in Paragraph 71 of the

Complaint.

72.   In making and disseminating the statements alleged herein, Defendants knew or should have known that their statements were false and misleading and therefore in violation of § 11-701, *et seq.*

**ANSWER**:   Defendants deny the allegations and conclusions of law contained in

Paragraph 72 of the Complaint.

73.   As a direct and proximate result of Defendants' false advertising, Plaintiff and members of the Class suffered damages in the form of monies paid to purchase the *Oblivion* video game, and/or the difference in value between an *Oblivion* video game with and without the Animation Defect.

**ANSWER**:   Defendants deny the allegations contained in Paragraph 73 of the

Complaint.

74.   Plaintiff seeks an order enjoining Defendants from continuing to engage in the false advertising described herein.  Plaintiff seeks an order (1) requiring Defendants to cease the false advertising practices described herein; (2) requiring Defendants to restore to Class members any money acquired by means of false advertising (restitution); and, (3) awarding reasonable costs and attorneys' fees.

**ANSWER**:   Paragraph 74 of the Complaint sets forth conclusions of law to which no

answer is required.  To the extent an answer is required, Defendants deny that Plaintiff is entitled

to relief and deny the allegations contained in Paragraph 74 of the Complaint.

## COUNT III
### Breach of Implied Warranty of Merchantability
### (On behalf of Plaintiff and the Class)

75.   Plaintiff incorporates by reference paragraphs 1 through 55 above as if set forth fully herein.

**ANSWER**:   Defendants incorporate by reference their answer to each and every

allegation set forth in Paragraphs 1 through 55 of this Answer as if set forth fully herein.

20

76.     Under MD. [sic] Code § 2-314, a warranty of merchantability is implied in the sale of goods by a merchant who deals in goods of that kind.

**ANSWER**:     Paragraph 76 of the Complaint sets forth conclusions of law to which no answer is required. To the extent an answer is required, Defendants lack sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 76 of the Complaint and therefore deny them.

77.     At the time Defendants designed, manufactured, and sold the *Oblivion* video game for use by Plaintiff and the Class, Defendants knew of the uses for which the *Oblivion* video game was intended, and impliedly warranted it would be of merchantable quality and fit for its intended use.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 77 of the Complaint.

78.     Defendants' implied warranty included that the *Oblivion* video game would offer free-form, open-ended, expansive gameplay, and be free of inherent defects that prevented such gameplay. In actuality, the *Oblivion* video game suffered from the Animation Defect, such that the *Oblivion* video game was not of merchantable quality or fit for its intended use.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 78 of the Complaint.

79.     As a direct and proximate result of Defendants' misconduct, Plaintiff and the Class have suffered damages, including the loss of monies paid to purchase the *Oblivion* video game, and/or the difference in value between an *Oblivion* video game with and without the Animation Defect.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 79 of the Complaint.

**COUNT IV**
**Restitution/Unjust Enrichment**
**(On behalf of Plaintiff and the Class)**

80.     Plaintiff incorporates by reference paragraphs 1 through 55 above as if set forth fully herein.

**ANSWER**:     Defendants incorporate by reference their answer to each and every

allegation set forth in Paragraphs 1 through 55 of this Answer as if set forth fully herein.

81.     Plaintiff and the Class have conferred a benefit upon Defendants.  Defendants have received and retained money belonging to Plaintiff and the Class as a result of its [sic] unlawful and deceptive practices.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 81 of the

Complaint.

82.     Defendants appreciate or have knowledge of said benefit.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 82 of the

Complaint.

83.     Under principles of equity and good conscience, Defendants should not be permitted to retain money belonging to Plaintiff and the Class that it [sic] unjustly received as a result of its [sic] actions.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 83 of the

Complaint.

84.     Plaintiff and the Class have suffered financial loss as a direct result of Defendants' conduct.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 84 of the

Complaint.

85.     Plaintiff, on his own behalf and on behalf of the Class, seeks the imposition of a constructive trust on and restitution of the proceeds Defendants received as a result of its [sic] conduct described herein, as well as attorneys' fees and costs.

**ANSWER**:     Defendants deny the allegations contained in Paragraph 85 of the

Complaint.

22

## AFFIRMATIVE DEFENSES

Further answering the Complaint, Defendants assert the following affirmative defenses. Defendants intend to rely on such other and further defenses as may become available or apparent during the course of this case, and hereby reserve their right to amend their Answer and assert all defenses and counterclaims as they deem appropriate at trial.

### First Affirmative Defense

Plaintiff's claims and prayers for relief are barred, in whole or part, for failure to state a claim on which relief can be granted.

### Second Affirmative Defense

Plaintiff's claims may not be maintained as a class action because the named Plaintiff and the putative class cannot satisfy the requirements of Federal Rule of Civil Procedure 23.

### Third Affirmative Defense

Plaintiff's claims are barred in whole or part because Plaintiff has not suffered, and will not suffer, any injury to a legally protected or cognizable interest by reason of Defendants' conduct as alleged in the Complaint.

### Fourth Affirmative Defense

Plaintiff's claims are barred in whole or part because Plaintiff and members of the putative class have no standing or capacity to bring some or all of the claims raised in this suit.

### Fifth Affirmative Defense

Plaintiff's claims are barred in whole or in part by the applicable statutes of limitations.

### Sixth Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrine of laches.

### Seventh Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

### Eighth Affirmative Defense

Plaintiff's claims are barred in whole or in part by his acquiescence and/or the doctrine of waiver.

### Ninth Affirmative Defense

Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands and/or the doctrine of *in pari delicto*.

### Tenth Affirmative Defense

Plaintiff's claims are barred in whole or in part because Plaintiff and members of the putative class are not in privity with Defendants.

### Eleventh Affirmative Defense

Plaintiff's claims are barred in whole or part for lack of justifiable reliance.

### Twelfth Affirmative Defense

Plaintiff's claims are barred in whole or part for lack of causation.

### Thirteenth Affirmative Defense

Plaintiff's claims are barred in whole or part by the doctrine of puffery.

### Fourteenth Affirmative Defense

The Court lacks subject matter jurisdiction over this action.

### Fifteenth Affirmative Defense

Defendants deny that Plaintiff has any valid cause of action under the state statutes alleged in the Complaint.  However, if such claims are found to exist, Defendants reserve their right to plead all available defenses under those statutes.

### Sixteenth Affirmative Defense

Plaintiff's claims for damages and other relief are barred in whole or part for Plaintiff's failure to mitigate his alleged injuries and damages.

### Seventeenth Affirmative Defense

Plaintiff's claims are barred in whole or in part because Plaintiff has not been damaged by any act or omission on the part of Defendants.

### Eighteenth Affirmative Defense

Plaintiff's claims are barred in whole or in part because Plaintiff's alleged injuries and damages are remote and speculative and therefore are not recoverable.

### Nineteenth Affirmative Defense

Plaintiff's claims for special damages fail because such damages, including consequential and incidental damages, must be specifically stated.

### Reservation of Rights and Defenses

Defendants have not knowing or intentionally waived any applicable defenses and reserve the right to assert and rely on such other applicable defenses as may become available or apparent during discovery proceedings.  Defendants reserve the right to amend their Answer and/or Affirmative Defenses accordingly, and/or withdraw defenses that they deem to be inapplicable during the course of subsequent discovery.

### CONCLUSION

WHEREFORE, Defendants deny that Plaintiff is entitled to any relief whatsoever and respectfully request judgment dismissing the Complaint with prejudice, and with costs and fees, as may be allowed by law, and such further relief as the Court deems appropriate.

Dated: December 12, 2011                    Respectfully submitted,

                                            s/ John T. Williams_____
HINKHOUSE WILLIAMS WALSH LLP
John T. Williams (admitted *pro hac vice*)
Jason H. Nash (admitted *pro hac vice*)
180 N. Stetson Avenue, Suite 3400
Chicago, Illinois  60601
Telephone: (312) 784-5400
Facsimile: (312) 784-5499
jwilliams@hww-law.com
jnash@hww-law.com

William F. Jung
FBN: 380040
JUNG & SISCO, P.A.
101 E. Kennedy Blvd., Ste. 3920
Tampa, FL 33602
Telephone: (813) 225-1988
Facsimile: (813) 225-1392
wjung@jungandsisco.com

***Attorneys For Defendants ZeniMax Media Inc.
and Bethesda Softworks LLC***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Defendants' Answer and Affirmative Defenses was served upon the following counsel of record by electronic mail through the ECF System on December 12, 2011.

s/ John T. Williams
HINKHOUSE WILLIAMS WALSH LLP
John T. Williams (admitted *pro hac vice*)
Jason H. Nash (admitted *pro hac vice*)
180 N. Stetson Avenue, Suite 3400
Chicago, Illinois 60601
Telephone: (312) 784-5400
Facsimile: (312) 784-5499
jwilliams@hww-law.com
jnash@hww-law.com

William F. Jung
FBN: 380040
JUNG & SISCO, P.A.
101 E. Kennedy Blvd., Ste. 3920
Tampa, FL 33602
Telephone: (813) 225-1988
Facsimile: (813) 225-1392
wjung@jungandsisco.com

***Attorneys For Defendants ZeniMax Media Inc. and Bethesda Softworks LLC***

ND: 4850-5522-6894, v. 1