# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**LAWRENCE WALEWSKI,**

        **Plaintiff,**

**-vs-**                                     **Case No.  6:11-cv-1178-Orl-28DAB**

**ZENIMAX MEDIA, INC., and BETHESDA SOFTWORKS, LLC,**

        **Defendants.**
_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** (Doc. No. 40) |
| **FILED:** | **November 16, 2011** |

_____

**THEREON** it is **RECOMMENDED** that the motion be **DENIED**.

**Background**

      In his Class Action Complaint, Plaintiff Lawrence Walewski asserts claims of deceptive trade practices, false advertising, breach of implied warranty of merchantability, and unjust enrichment – all under Maryland law–arising from sales of an allegedly defectively designed video game developed by Defendant Bethesda Softworks LLC, a wholly-owned subsidiary of Defendant ZeniMax Media, Inc. ("Defendants").  Following service, Defendants moved to dismiss the Complaint, contending, among other things, that Maryland law did not apply (Doc. No. 25).  While the motion to dismiss was

pending, Defendants moved to strike the class allegations from the Class Action Complaint, for failure to comply with M.D. Fla. L.R. 4.04(b), which provides:

> Within ninety (90) days following the filing of the initial complaint in such an action, unless time is extended by the Court for cause shown, the named plaintiff or plaintiffs shall move for a determination under Rule 23(c)(1) as to whether the case is to be maintained as a class action.

(Doc. No. 31).

Plaintiff responded to the motion to strike (Doc. No. 34) and moved for leave to file his tardy motion for class certification, claiming excusable neglect (Doc. No. 33).  The Court found no good cause for the delay, but granted the motion for leave, noting that the delay was minimal and nonprejudicial, and finding that the overriding principle is to determine cases on the merits (Doc. No. 39).  Plaintiff was given five days to file a class certification motion.  *Id.*[1]  The instant motion timely followed.

Shortly after the District Court denied the motion to dismiss, without prejudice (Doc. No. 43), Defendants responded to the class certification motion (Doc. No. 46) and answered the Complaint (Doc. No. 49).   Plaintiff filed an allowed reply in support of the motion for certification (Doc. No. 51), and the matter was referred to the undersigned United States Magistrate Judge for a report and recommendation.  Upon review of the papers and the applicable law, it is **respectfully recommended** that the motion be **denied** and the Class Action Complaint be **dismissed.**

**Standards of Law**

"A district court must conduct a rigorous analysis of the [R]ule 23 prerequisites before certifying a class." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (citation and internal quotation marks omitted). To obtain class certification, a named plaintiff must (1) have standing, (2) satisfy each requirement of Rule 23(a) of the Federal Rules of Civil Procedure, and (3)

---

[1]Defendants objected to this Order (Doc. No. 44), however, it was affirmed by the District Court (Doc. No. 52).

satisfy at least one of the requirements of Rule 23(b). *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008); *Klay v. Humana, Inc.,* 382 F. 3d 1241, 1250 (11th Cir. 2004). "The burden of proof to establish the propriety of class certification rests with the advocate of the class." *Valley Drug Co. v. Geneva Pharmaceuticals, Inc*., 350 F.3d 1181, 1187 (11th Cir. 2003), *citing Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir.1975).

Pursuant to Rule 23(a), a class may be certified only if (1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly. Fed.R.Civ.P. 23(a); *Valley Drug,* 350 F.3d at 1187-1188. Failure to prove any of the four Rule 23(a) requirements and at least one of the alternative requirements of Rule 23(b) precludes class certification. *Valley Drug,* 350 F. 3d at 1188.

Plaintiff seeks certification pursuant to Rule 23(b)(2), which allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . ." Fed. R. Civ. P.23(b)(2). The United States Supreme Court has recently recognized that:

> Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages.

*Wal-Mart Stores, Inc. v. Dukes,* – U. S.–, 131 S.Ct. 2541, 2557, 180 L.Ed. 2d 374 (2011).  Monetary

relief is only available in a Rule 23(b)(2) class action if it is incidental to the requested injunctive or

declaratory relief.  *Vega,* 564 F. 3d at 1265, fn. 8.

Additionally, Plaintiff seeks class certification pursuant to Rule 23(b)(3) which requires a

finding that " the questions of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).  Pertinent to the Rule

23(b)(3) inquiry are evaluation of the following factors:

> (A) the class members' interests in individually controlling the prosecution or defense
> of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun
> by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the
> particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.*

Importantly, there is no need for inquiry under Rule 23(b) if Rule 23(a) has not been satisfied.

Fed.R.Civ.P. 23(b) ("A class action may be maintained if Rule 23(a) is satisfied and ..."). *See also*

*Bacon v. Stiefel Laboratories, Inc.,* 275 F.R.D. 681, 695 (S.D. Fla. 2011).

**Discussion**

*Preliminary Matters*

Although Plaintiff moves for class certification and presents argument and analysis supporting

certification, in its brief Plaintiff asks the Court *not* to rule on the motion, but to: "(1) enter and

postpone ruling on Plaintiff's Motion for Class Certification pursuant to Local Rule 4.04(c); (2) allow

for the parties to engage in discovery on class-wide issues as agreed during the initial 26(f)

conference; (3) grant Plaintiff leave to file a full memorandum in support of his Motion for Class

Certification upon the conclusion of class-wide discovery; (4) grant Plaintiff's Motion for Class

Certification after full briefing of the issues presented herein; and (5) provide all other and further relief that the Court deems equitable and just." (Doc. No. 40 at 11). In essence, Plaintiff would like the Court to certify the class on the current showing, but, should the Court find this showing to be wanting, Plaintiff also wants leave to conduct discovery, file "a full" memorandum upon conclusion of that discovery, and have the Court consider the whole thing again. This approach is inconsistent with the Rules and the proper conservation of judicial resources.

As set forth above, due to Plaintiff's failure to timely file the motion initially, Plaintiff had more than the usual time under the Local Rule in which to marshal his arguments, draft his "full briefing," and make the necessary showing. Federal Rule 23(c)(1) requires a class ruling "at an early practicable time." The Rule does not contemplate a second chance if the motion is denied. To the extent the motion is a veiled request to file an amended motion months down the road, it is **recommended** that it be denied.

The Court now turns to the merits.

*The Proposed Class*

"Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Sher v. Raytheon Co.,* 419 Fed.Appx. 887, 890 (11th Cir. 2011),[2] citing *Valley Drug*. As is clear, before the Court can conduct the "rigorous analysis" of whether these claims meet the Rule 23 standards, it must first, by necessity, define the claims.

As noted, Plaintiff's claims arise out of an alleged "Animation Defect" in "The Elder Scrolls IV: Oblivion" video game. According to the Complaint (Doc. No. 1), the Animation Defect causes

---

[2]*Sher,* as an unpublished opinion of the Eleventh Circuit, constitutes persuasive, and not binding, authority. See 11th Cir. R. 36-2 and I.O.P. 6.

all "secondary" animations to freeze and prevents players from progressing in the game, forcing players to forfeit all progress, erase their existing game and restart from the beginning of the game. (*Id*. ¶¶ 23-24.)  Plaintiff asserts that Defendants have been aware of the Animation Defect and its impact on the Oblivion video game, but they have refused to remedy the defect or to inform future purchasers of the inherent defects in the game. (*Id.* ¶¶ 31-35.)  Plaintiff claims injury in that "[t]he existence of the Animation Defect significantly decreases the value of the Oblivion video game to consumers." (*Id.* ¶ 38.)  Plaintiff claims that "[h]ad consumers known of the inherent defects in the Oblivion video game prior to purchase, they would not have purchased Oblivion or would have paid less money to purchase the game," and are further harmed "because the Animation Defect diminishes the resale value of the Oblivion video game on the secondary market." (*Id.* ¶¶ 39-40.)

Plaintiff alleges that the Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005,  28 U.S.C. § 1332(d), as Plaintiff is a citizen of Florida and Defendants are Delaware entities, with principal places of business in Maryland. *Id.*  ¶¶ 1-3.   Plaintiff pleads four counts in the Complaint – (1) Violation of the Maryland Deceptive Practices Act; Md. Code Ann., Comm. Law § 13-101 *et seq.*; (2) False Advertising in Violation of the Maryland Consumer Protection Act, Md. Code Ann., Comm. Law § 11-701; 2 (3) Breach of Implied Warranty of Merchantability under Md. Code § 2-314; and (4) Restitution/Unjust Enrichment under Maryland common law.

A plaintiff seeking certification of a claim for class treatment must propose an adequately defined class that satisfies the requirements of Rule 23. *Kelecseny v. Chevron, U.S.A., Inc*., 262 F.R.D. 660, 667 (S.D. Fla. 2009) ("Before engaging in the analysis required by Rule 23, the question of whether the class has been adequately defined should be considered.")  Here, Plaintiff defines the class as follows:

> All persons or entities residing in the United States who purchased any version of the Elder Scrolls IV: Oblivion video game.

Plaintiff contends, without much discussion, that the proposed class definition "properly defines an identifiable class that can be ascertained by objective criteria." (Doc. No. 40 at 3).

As stated, the proposed class includes all persons "or entities" nationwide, who purchased any version of the game, presumably from anyone, anywhere, at any time – whether or not they ever were injured by (or experienced) the alleged Animation Defect.  This overbroad definition is not limited in any way to persons who purchased *from Defendants,* and therefore presumably includes persons who purchased a copy of the game–new or used– from anyone else.  This definition is fraught with difficulties.

As the Complaint alleges a "strong" secondary market for video games, "allowing consumers to sell used video games to traditional retailers and directly to other consumers through online transactions" (Doc. No. 1, ¶40),  it is likely that an untold number of games were purchased through third parties in completely private transactions through various informal means and without any direct involvement (and thus outside the knowledge or control) of Defendants.  Setting aside the implications of the lack of privity on the causes of action, Plaintiff does not propose any method of identifying these secondary market purchasers sufficient to determine who is entitled to notice of the suit and who will be bound by any resulting judgment.  "A court should deny class certification where the class definitions are overly broad, amorphous, and vague, or where the number of individualized determinations required to determine class membership becomes too administratively difficult." *Perez v. Metabolife Intern., Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) (denying motion for class certification where, among other defects, putative class members were not likely to be able to produce objectively verifiable proof of class membership).

Even if the parties were able to identify all purchasers of the game from all sources, the popularity of the game, as described by the parties, makes it especially difficult to cull appropriate class members from the "millions" of game owners, without extensive fact-finding.  Under the

definition, for example, a video store which buys the second hand game from a consumer and resells it for more than it paid for it is included in the class, despite the fact that the entity itself never experienced the Animation Defect (as it never played the game) and did not suffer any loss.

Even with respect to individuals only, the class definition is wanting.  Under the definition, for example, if a teenager purchases a used copy from his brother, he is a class member *even if he has no complaints about the game*, but if his brother *gives* him the same game as a gift, he is not a class member, *even if he experiences the Alleged Defect*.  Plaintiff fails to set forth a workable method for identifying which players and owners are correctly included within the class, and the Court cannot speculate on same.  Where determination of class members requires individual fact-finding, class certification has been denied.  *See Kelecseny, supra.*

This definition is not only unworkable in terms of identifying class members, it impermissibly includes members who have no cause of action as a matter of law.  For example, assuming the Court were to conclude that Maryland's consumer protection laws were, as pled, applicable to this dispute, the inclusion of "all . . . entities" is fatal to such a claim:

> The Maryland Consumer Protection Act ("CPA") purposes "to provide minimum standards for the protection of consumers." Md.Code Ann., Comm. Law II § 13–103(a)(2000). The CPA prohibits certain unfair and deceptive trade practices "in [t]he sale ... of any consumer goods ... or consumer services" or in "[t]he offer for sale ... of consumer goods ... or consumer services," id. § 13–303, and it authorizes private causes of action against violators, id. § 13–408(a). **Such causes of action, however, are limited to "consumers" purchasing "consumer" goods or services**. *See Boatel Indus. v. Hester*, 77 Md.App. 284, 303, 550 A.2d 389 (1988); *see also Penn–Plax, Inc. v. L. Schultz, Inc.*, 988 F.Supp. 906, 909–11 (D.Md.1997) (canvassing Maryland cases, observing that three federal courts, in reliance on those cases, have held that only consumers have standing under the CPA, and finally asserting that "there is no competitor standing under the CPA"). **The CPA defines "consumers" as purchasers or recipients of "consumer" goods or services, "which are primarily for personal, household, family, or agricultural purposes."** Md.Code Ann., Comm. Law II § 13–101(c), (d).

*Fare Deals Ltd. v. World Choice Travel.Com, Inc.*, 180 F.Supp.2d 678, 692 (D. Md. 2001) (emphasis added – holding  a "corporate commercial entity" is not a consumer under this Act).  Retailers and

other businesses who purchased the games for resale purposes are not "consumers" under this provision.

For the reasons set forth above, the Court finds the proposed class in not adequately defined and is unworkable for certification purposes. The absence of a workable class definition defeats proper analysis of the required Rule 23 showing, as the Court cannot accurately evaluate any of the Rule 23(a) criteria (numerosity, commonality, typicality and adequacy of class representative) without it. While this, alone, is dispositive, the Court addresses another fatal defect precluding full analysis.

*Standing*

This threshold showing of an actual case or controversy requires that a plaintiff "must have suffered in injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *London v. Wal–Mart Stores, Inc.*, 340 F.3d 1246, 1251 (11th Cir.2003) (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). "Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir.1987), *cert. denied*, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1988). The parties address this issue pursuant to the typicality analysis.

For present purposes, the Court presumes that the allegations in the Complaint (taken as true) establish that Plaintiff suffered an injury sufficient to find standing to seek *some* form of redress. Before the Court can go further, however, it must resolve the overriding issue of whether a Florida plaintiff, who (apparently) purchased and played the game in Florida and experienced the alleged Animation Defect here, can nonetheless prosecute his claims against Delaware corporations, on his own behalf and on behalf of a nationwide class, under Maryland law.

*— Choice of Law Applicable to the Class*

The parties have previously briefed the issue of choice of law in the context of the Motion to Dismiss and the District Court postponed resolution of that issue, recognizing that "the issues of class certification, class scope, and choice of law may well be intertwined. . ." (Doc. No. 43).  It is now appropriate to resolve that issue, in order to determine the merits of the instant motion.

A district court sitting in diversity "must apply the choice of law rules of the forum state." *Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996). "Under Florida law, a court makes separate choice of law determinations with respect to each particular issue under consideration" and must apply the appropriate test for each issue. *Id*.

As to tort claims, Florida favors the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws § 145. *Id.* at 1115-16, *citing Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla.1980).  Section 145 provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.[3]
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

---

[3]Restatement (Second) of Conflict of Laws § 6 provides:
(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* "The place of injury still determines which state's law applies, unless some other state has a more "significant relationship" to the issue." *Mezroub v. Capella,* 702 So.2d 562, 565 (Fla. 2d DCA 1997) (because that plaintiff's injury occurred in Georgia, "we begin our analysis with the assumption that Georgia law will apply unless Florida has a more significant relationship" with respect to a particular issue).

Section 148 of the Restatement provides the choice of law principles for fraud and misrepresentation, and Florida would apply this section. *Trumpet Vine,* 92 F. 3d at 1118. The pertinent part of section 148 provides:

> (2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Id. (quoting* Restatement (Second) of Conflict of Laws § 148 (1971).)

As to contract matters, "Florida has traditionally applied the *lex loci contractus* rule for choice of law determinations regarding issues of contract law." *Id.* at 1119 (internal citations omitted).

> Under the *lex loci contractus* method issues concerning the validity and substantive obligations of contracts are governed by the law of the place where the contract is made. *Ray-Hof Agencies, Inc. v. Petersen,* 123 So.2d 251, 253 (Fla.1960); *Jemco [,Inc. v. United Parcel Service, Inc.],* 400 So.2d [466] at 501 [Fla. 1982]. A contract is made where the last act necessary to complete the contract is performed. *Jemco,* 400 So.2d at 500.

-11-

*Id.*

Finally, "[a]n unjust enrichment claim is one in the nature of quasi-contract. Florida's choice of law as to contracts is that of *lex loci contractus*, which looks to the place the contract was executed." *In re NationsRent Rental Fee Litigation,* Case No. 06 Civ. 60924, 2009 WL 636188, *10 (S.D. Fla. Feb. 24, 2009) (finding that the law on unjust enrichment of each renter's particular state is to be applied in resolving claims).

The above factors compel the application of Florida law to Plaintiff's claims.

As Count I and Count II are for alleged misrepresentations and omissions, the Court looks to the factors in Sections 145 and 148 of the Restatement to determine which state has the most significant relationship to the occurrence and the parties.

Plaintiff alleges that he is a Florida citizen.  Although Plaintiff argues in his papers that; "[e]ach of Plaintiff's claims against Defendants (who are both headquartered in Maryland) arise from Defendants' design of a defective product (which occurred in Maryland), failure to disclose the existence of the Animation Defect (a decision made in Maryland), and misrepresentations and omissions regarding the attributes of Oblivion (which emanated from Maryland)" (Doc. No. 17 at 4), there is no evidence offered to support this argument.[4]  Indeed, in the Complaint, Plaintiff has alleged that Defendants are *Delaware* entities with principal places of business in Maryland, and further notes that "Defendant transacts business in Florida and throughout the country."  (Doc. No. 1, ¶¶ 2-3).  As Defendants are alleged to do business in Florida and nationwide, the alleged misrepresentations or omissions to any particular member of the purported class could have "emanated" from a variety of locations.  *See In re NationsRent Rental Fee Litigation,* No. 06-60924-CIV,  2009 WL 636188, *5 (S.D. Fla. Feb. 24, 2009) ("Plaintiffs emphasize that courts have held that in cases involving

---

[4]*See also* Doc. No. 27, where Plaintiff asserts that Maryland applies to this dispute "because the Defendants, as citizens of Maryland, designed the defective product in Maryland, made the decision not to disclose the defect in Maryland, and made the misrepresentations of which Plaintiff complains from Maryland." (Doc. No. 27).

misrepresentations, the location of the defendant's conduct should be given more weight than the location of the injury. . . . However, other than the fact that Defendants have their headquarters in Florida (but are not Florida corporations), Plaintiffs have presented no evidence that any of Defendants' conduct, including but not limited to the drafting of the Agreement, occurred in Florida."). By contrast, the Court can assume that Plaintiff reviewed the marketing materials in Florida, purchased the game in Florida, and/or was likely "injured" in Florida, as Plaintiff is a Florida citizen and avers that "a substantial part of the events giving rise to the claims asserted herein occurred in this district." (Complaint, Doc. No. 1, ¶5).

Viewing the totality of the showing (such as it is), the Court finds: (a) the place where the injury occurred weighs in favor of Florida; (b) the place where the conduct causing the injury occurred is neutral, as it cannot be ascertained on the record before the Court;[5] (c) the domicile, residence, nationality, place of incorporation and place of business of the parties weighs in favor of Florida, Delaware and Maryland, with Florida being the most favored, as Plaintiff lives here and Defendant conducts business here, and (d) the place where the relationship, if any, between the parties is centered appears to be Florida, in that "a substantial part of the events giving rise to the claims asserted herein occurred in this district." Complaint, Doc. No. 1, ¶5.[6] Consideration of the § 6 factors also favor applying the law of Florida to this Florida resident's claim for an injury that occurred in Florida. Clearly, Florida has a strong interest in protecting its citizens from allegedly deceptive and unfair trade

---

[5]Even if Plaintiff's assumption that the alleged false statements occurred in marketing materials prepared in Maryland, this factor is not determinative here. *See Cohen v. Implant Innovations, Inc.*, 259 F.R.D. 617, 638 (S.D. Fla. 2008) (applying Florida choice of law principles in a similar case involving an unfair trade practice claim relating to an allegedly defective product and alleged misrepresentations made about the product, and finding that the state where the plaintiff was injured had the most significant relationship to the claim: "Although the Implant Product was, for the most part, manufactured in Florida and, presumably, the offending marketing materials were based in Florida, the plaintiff received the marketing materials and the Implant Product in its home state of Missouri.").

[6]The Court construes this allegation as an admission that Plaintiff must have received the representations and relied upon them in Florida, as well. *See* Restatement (Second) of Conflict of Laws § 148 (1971).

practices that cause injury within the state.   The Court finds Florida has the most significant relationship to these counts.

Counts III (breach of implied warranty) and Count IV (unjust enrichment) must also be maintained under Florida law, with respect to Plaintiff's claims.  Applying the *lex loci contractus* rule, Plaintiff does not dispute that he purchased his game in Florida.  As unjust enrichment is a quasi-contract claim, the rule applies to this claim, as well.  *See In re NationsRent Rental Fee Litigation, supra.*[7]

Based on the foregoing, the Court concludes that Florida law, and not Maryland law, applies to the alleged claim of this Plaintiff, and therefore this Plaintiff does not have standing to bring actions based on violations of Maryland law.  "[I]t is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to just one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Griffin*, supra, 823 F.2d 1476, 1483.  Plaintiff has not suffered an injury that gives rise to a claim under Maryland's consumer statutes or common law, thus, Plaintiff cannot serve in a

---

[7]To the extent Count IV of the Complaint may be interpreted as arising under the common law of Florida, it is inappropriate for class certification.  As the Eleventh Circuit has noted:

> In Florida, "[t]he essential elements of a claim for unjust enrichment are: (1) a benefit conferred upon a defendant by the plaintiff, (2) the defendant's appreciation of the benefit, and (3) the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof." *Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d DCA 2006); *see Florida Power Corp. v. City of Winter Park*, 887 So.2d 1237, 1241 n. 4 (Fla.2004). Critical for present purposes, before it can grant relief on this equitable claim, a court must examine the particular circumstances of an individual case and assure itself that, without a remedy, inequity would result or persist. Due to the necessity of this inquiry into the individualized equities attendant to each class member, courts, including ours, have found unjust enrichment claims inappropriate for class action treatment. *See, e.g., Klay*, 382 F.3d at 1267; Rollins, 951 So.2d at 876-77; *Ortiz v. Ford Motor Co.*, 909 So.2d 479, 481 (Fla. 3d DCA 2005) (noting that "the equities surrounding each class member's [interaction with the defendant] is [sic] not the same"). In short, common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts.

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009).  This is especially true here, as the class purports to include secondary market purchasers who obtained the game without any direct benefit to Defendant.

representative capacity to prosecute the claims pled.  As this Plaintiff has no standing to prosecute the Complaint, as pled, the Court finds the analysis of the motion to certify the class, as defined and based on this Complaint, can go no further.[8]

For the reasons set forth above, it is **respectfully recommended** that the motion be **denied.**  Further, as set forth above, Florida law governs Plaintiff's claims.  As Plaintiff seeks relief only under the laws of Maryland, and Maryland's laws are inapplicable to this dispute, it is **respectfully recommended** that the Complaint be dismissed, for failure to state a claim.  *See Pastor v. Union Central Life Ins. Co.,* 184 F.Supp.2d 1301, 1303 (S.D. Fla. 2002) (granting motion to dismiss when cause of action pled under inapplicable law).[9]

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 27, 2012.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy

_____

[8]To be clear, the Court is not suggesting that a class action can never be maintained on the alleged facts; rather, the Court finds the facts alleged with respect to this plaintiff do not state a cause of action for violation of Maryland law. As those are the only causes of action pled, this particular plaintiff is without standing to pursue them. Essentially, "the question is whether the person whose standing is challenged is a proper party to request an adjudication o[f] a particular issue and not whether the issue itself is justiciable." *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968).

[9]The Court declines the implied invitation, as set forth in the briefs, to analyze the motion as if Plaintiff had properly pled a cause of action under the laws of multiple states. Any analysis of a class certification motion requires an adequate class definition and a plaintiff with standing to prosecute the claims. As neither are present here, further analysis of claims not yet pled would be an impermissible advisory opinion.

-15-